Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



★ ★ ★ ★ ★ ★

# MEMORANDUM OPINION

No. 04-07-00468-CV

Sondra L. **GROHMAN-KAHLIG**,
Appellant

v.

Clarence J. **KAHLIG**, II,
Appellee

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2005-CI-13102
Honorable John D. Gabriel, Jr., Judge Presiding

Opinion by:    Alma L. López, Chief Justice

Sitting:    Alma L. López, Chief Justice
Phylis J. Speedlin, Justice
Rebecca Simmons, Justice

Delivered and Filed:   October 29, 2008

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

Sondra L. Grohman formerly known as Sondra L. Grohman-Kahlig sued her ex-husband,

Clarence J. Kahlig, II, for breach of contract after he converted two corporations, whose stock was

pledged to secure a note, to limited partnerships.  Grohman later amended her petition to add various

entities owned by Kahlig as additional defendants and to add additional tort claims.  A jury found

that Kahlig did not breach any agreement as a result of the conversions.  On appeal, Grohman

contends the trial court erred by: (1) including an erroneous instruction in the jury charge; (2) failing

to grant a judgment notwithstanding the verdict because she conclusively established her breach of contract claim; (3) refusing to submit her tort claims to the jury; and (4) awarding attorney's fees. We affirm the trial court's judgment as to Grohman's tort claims. We reverse the trial court's judgment as to Grohman's breach of contract claim and Kahlig's claim for declaratory relief. We remand the cause to the trial court for further proceedings.

## BACKGROUND

Grohman and Kahlig were divorced in 2001. As part of their divorce settlement, Kahlig agreed to pay Grohman approximately $22 million. Kahlig paid Grohman approximately $12 million in cash and gave Grohman a promissory note for $9.5 million. The note was secured by seventy percent of Kahlig's stock in two corporate entities. Certificates evidencing the stock pledged by Kahlig were placed in escrow with a bank. Kahlig paid each of the annual payments of approximately $1 million due on the note in 2002, 2003, and 2004.[1]

During the course of a second child custody suit filed by Grohman, Grohman discovered the corporate entities, whose stock was pledged to secure the note, had been converted to limited partnerships in 2003. The entities were converted so they would not be required to pay Texas franchise taxes.

Based on this discovery, Grohman sued Kahlig in August of 2005. Initially, Grohman only asserted a claim against Kahlig for breach of contract. Grohman alleged that the conversions resulted in a breach of the Security Agreement because Kahlig agreed not to "sell, transfer, lease or otherwise dispose of the Collateral or any interest therein" without Grohman's consent and further agreed not to "allow the Collateral to become wasted or destroyed." Kahlig answered and asserted

---

[1] Kahlig also paid the annual payments that became due during the pendency of the underlying lawsuit and this appeal.

a counter-claim for declaratory relief, seeking a declaration that the Security Agreement permits Kahlig to unilaterally determine the business form under which the entities, North Park Lincoln Mercury and Kahlig Enterprises, operate and the conversion of the business form does not constitute an event of default under the Security Agreement.

In 2006, the Texas law that enabled limited partnerships to avoid the payment of franchise taxes was amended. Because the limited partnership form was no longer advantageous for this purpose, the entities were reconverted to corporations in 2006.

In January of 2007, Grohman amended her pleadings to add North Park Lincoln Mercury and Kahlig Enterprises in their various business forms as defendants. Grohman also added various tort claims and a claim for declaratory relief. Grohman further asserted claims against the bank that served as the escrow agent; however, Grohman later dropped the bank as a defendant in a second amended petition after the bank filed a no evidence motion for summary judgment and a motion for sanctions.

A jury found that Kahlig did not fail to comply with the terms of the note, security agreement, or escrow agreement by converting the corporations to limited partnerships. The trial court then entered a take nothing judgment as to Grohman's claims against both Kahlig and the entities. The trial court granted Kahlig's request for declaratory relief and declared that Kahlig could unilaterally determine the business form under which the entities would operate without notice to Grohman. The trial court also awarded Kahlig $137,757.00 and the entities $82,367.08 in attorney's fees.

## JURY CHARGE INSTRUCTION

In her first issue on appeal, Grohman contends the trial court erred by improperly including statutory language in the instruction to the first jury question which required the jury to decide a

question of law instead of answering a question of fact. The instruction about which Grohman complains accompanied the question submitted to the jury with regard to Grohman's breach of contract claim and reads:

QUESTION NUMBER ONE:

Did Clarence J. Kahlig, II, fail to comply with the terms of the parties' Promissory Note, Security Agreement or Escrow Agreement by converting the corporations to partnerships?
Answer "YES" or "NO."
ANSWER: _____

When a conversion of a converting entity takes effect:
(1) the converting entity shall continue to exist, without interruption, but in the organizational form of the converted entity rather than in its prior organizational form;
(2) all rights, title and interests to all real estate and other property owned by the converting entity shall continue to be owned by the converted entity in its new organizational form without reversion or impairment, without further act or deed, and without any transfer or assignment having occurred, but subject to any existing lien or other encumbrances thereon;
(3) all liabilities and obligations of the converting entity shall continue to be liabilities and obligations of the converted entity in its new organizational form without impairment or diminution by reason of the conversion;
(4) all rights of creditors or other parties with respect to or against the prior interest holders or other owners of the converting entity in their capacities as such in existence as of the effective time of the conversion will continue in existence as to those liabilities and obligations and may be pursued by such creditors and obligees as if the conversion had not occurred;
(5) the shares and other evidences of ownership in the converting entity that are to be converted into shares, evidences of ownership, or other securities in the converted entity as provided in the plan of conversion shall be so converted, and if the converting entity is a domestic corporation, the former holders of shares in the domestic corporation shall be entitled only to the rights provided in the plan of conversion. [This paragraph will be subsequently referred to herein as the "Article 5.20 Instruction."]

A security interest is an interest in personal property or fixtures which secures payment or performance of an obligation. A security interest continues in collateral notwithstanding the sale, lease, license, exchange, or other disposition of the collateral. A security interest attaches by law to any identifiable proceeds of collateral.

The term "proceeds" means whatever is acquired upon the sale, lease, exchange, or other disposition of collateral, including rights arising out of collateral.

Grohman divides her issue into ten separate sub-arguments. In one sub-argument, Grohman contends that the trial court injected the language of article 5.20 of the Texas Business Corporation Act into the jury charge and instructed the jury that conversion was legally justified. In various other sub-arguments, Grohman contends that article 5.20 does not apply to the parties' agreement, determining the effect of article 5.20 was outside the province of the jury, the jury was confused by the instruction, and submitting the article 5.20 instruction was an improper inferential rebuttal question. One final sub-argument asserts that the trial court compounded its error by prohibiting Grohman's expert from opining on the effect of article 5.20; however, Grohman did not separately raise or brief an issue regarding the erroneous exclusion of evidence.

Kahlig and the entities respond that the instruction properly defined the technical term "conversion." Kahlig and the entities further respond that the inclusion of either the question or the instruction, if erroneous, was harmless.

We review allegations of error in the jury charge under an abuse of discretion standard. *Indian Beach Property Owners' Ass'n v. Linden*, 222 S.W.3d 682, 704 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *America's Favorite Chicken Co. v. Samaras*, 929 S.W.2d 617, 624 (Tex. App.—San Antonio 1996, writ denied). A trial court commits error if it submits a question of law to the jury. *Indian Beach Property Owners' Ass'n*, 222 S.W.3d at 704. Absent a showing of extraneous prejudice, however, submission of a question of law to the jury is generally harmless since no harm results if it is answered as the trial court should have answered it, or it can be deemed immaterial and disregarded by the trial court if answered incorrectly. *Indian Beach Property*

*Owner's Ass'n*, 222 S.W.3d at 705; *Hudson Buick, Pontiac, GMC Truck Co. v. Gooch*, 7 S.W.3d 191, 195 (Tex. App.—Tyler 1999, pet. denied).

During the charge conference, Kahlig and the entities objected to the inclusion of jury question number one because it was a question of law. Kahlig and the entities argue this same point in their brief, and we agree.

If contract language can be given a certain or definite meaning, then it is not ambiguous; it should be interpreted by a court as a matter of law. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003). Where the parties agree on the facts regarding performance of an unambiguous contract, whether a party has breached the contract is a question of law for the court. *Indian Beach Property Owners' Ass'n*, 222 S.W.3d at 705; *Schachtner v. Crosby State Bank*, No. 14-03-00424-CV, 2004 WL 78202, at *1 (Tex. App.—Houston [14th Dist.] Jan. 20, 2004, no pet.) (mem. op.); *Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

In *Indian Beach Property Owners' Ass'n*, the appellant argued that the trial court erred in submitting a question to the jury that required the jury to make a legal conclusion about applicable deed restrictions. 222 S.W.3d at 704. The question submitted to the jury was whether the appellees violated the applicable deed restrictions by constructing a fence. *Id*. Because the deed restrictions were unambiguous and the construction of the fence was undisputed, the appellate court agreed that the jury question presented a question of law. *Id*. at 705.

Similarly, in *Meek*, the appellant argued that the appellee waived any damages awarded for its breach of contract claim because the breach of contract claim was omitted from the jury charge. 919 S.W.2d at 808. The appellate court noted, however, that the existence of the contract wherein

the appellee agreed to pay the appellant fees for legal representation was undisputed as was the appellee's failure to pay the fees. *Id.* Therefore, the existence of a breach was a question of law, and no jury question was required. *Id.*; *see also Bank One, Texas, N.A. v. Stewart*, 967 S.W.2d 419, 432 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (noting dispute regarding terms of an agreement and whether undisputed actions constituted a breach were questions of law).

In this case, the parties' agreements are unambiguous. As Grohman states in her brief, "The clear and unambiguous agreement of the Parties is contained in three documents: the Promissory Note, the Security Agreement and the Escrow Agreement." Moreover, the parties agree on the facts regarding performance, i.e., it is undisputed that Kahlig converted the corporations to partnerships. Therefore, whether Kahlig breached the agreements by converting the corporations was a question of law for the trial court.

The next question is whether the submission of the question was harmless because the jury answered it as the trial court should have answered it. *Indian Beach Property Owner's Ass'n*, 222 S.W.3d at 705; *Hudson Buick, Pontiac, GMC Truck Co.*, 7 S.W.3d at 195. The introductory paragraphs to the Security Agreement define "Collateral" as the shares of stock and "all replacements, additions and substitutions therefor now owned or hereafter acquired by Borrower." Kahlig relies on this definition as evidence that the conversion was not a disposition, asserting that the security interest continued in the "replacement" partnership units. Although this definition ensures that Grohman's security interest will attach to whatever might be received as a result of a disposition, this portion of the agreement does not address whether such dispositions are permissible. Instead, in paragraph 5, the agreement provides, "Borrower will not sell, transfer, lease or otherwise dispose of the Collateral or any interest therein except in compliance with the release provisions

herein." The release provisions only provide for a release of a portion of the shares when the balance of the note is reduced to $4,750,000.00 and for complete release upon full payment. Although the term "Collateral" was defined to provide continued security for Grohman in the event of a disposition, paragraph 5 prohibits Kahlig from disposing of the Collateral. The parties' intent that the Collateral would consist of the stock is further evidenced by the execution of an escrow agreement and by paragraph 2 of the Security Agreement which states, "The Collateral is herewith delivered to and will be kept in the offices of Frost National Bank of San Antonio, Texas."

In his post-submission brief, Kahlig argues that the conversion was not a transfer or disposition to a "third party" in the traditional sense. The Texas Supreme Court, however, has held that the destruction of property by a secured creditor, which did not involve a transfer to a third party, was a disposition of property. *Tannenbaum v. Economics Laboratory, Inc.*, 628 S.W.2d 769, 771 (Tex. 1982). Accordingly, a disposition does not necessarily involve a transfer to a third party. *See id.*

Kahlig also makes reference to the following provision in paragraph 8 of the Security Agreement: "Until an event of default shall occur and be continuing, Borrower shall have all rights and all responsibilities in respect to the Collateral and may use it in any lawful manner not inconsistent with this Security Agreement, and Borrower shall have full power and authority in all matters concerning the Companies and their assets and businesses." If, however, the conversion is a disposition, the conversion would be a use of the Collateral "inconsistent with [paragraph 5 of] this Security Agreement."

The Plan of Reorganization setting forth the terms of the conversion provides that the shares of stock are converted into units of limited partnership interest and the shares, as a result of the

conversion, shall be canceled and retired and shall cease to exist. Given the undisputed facts regarding the conversion and the unambiguous terms of the Security Agreement, the cancellation of the shares was a disposition of the Collateral. Since Kahlig was the sole shareholder and authorized the conversion, Kahlig disposed of the Collateral and thereby technically failed to comply with the terms of the Security Agreement. Accordingly, the jury's response to question number one must be deemed immaterial and must be disregarded. *See Indian Beach Property Owners' Ass'n*, 222 S.W.3d at 705. Moreover, because such a conversion is a disposition under the Security Agreement, the trial court erred in declaring that the Security Agreement allows Kahlig to unilaterally determine the business form of the entities and that Grohman's permission is not required to change the business form in this manner.

The jury's response to the damages question was conditioned on an affirmative finding to question number one. Because the jury answered question number one in the negative, it did not reach the issue of damages. Although rule 44.1(b) of the Texas Rules of Appellate Procedure precludes us from ordering a separate trial on damages if liability is contested, liability in this case is now uncontested because it has been established as a matter of law. *See American Bankers Ins. Co. v. Caruth*, 786 S.W.2d 427, 427 (Tex. App.—Dallas 1990, no writ); *see also Browning Oil Co. v. Luecke*, 38 S.W.3d 625, 647 n.31 (Tex. App.—Austin 2000, pet. denied) (finding good cause to suspend rule and remand for damages determination). Constrained by the terms of the Security Agreement, we must reverse the trial court's judgment as to Grohman's breach of contract claim. All legal and equitable issues relating to damages or other relief that may or may not be appropriate based on Kahlig's disposition await further consideration on remand where the circumstances of the

case, including the substitution of collateral and the increased value of the entities, will need to be taken into account.

## TORT CLAIMS

In her third issue, Grohman contends the trial court erred in refusing her request to submit questions regarding her fraud, negligence and gross negligence claims.

Rule 278 of the Texas Rules of Civil Procedure requires the submission of questions that are raised by written pleadings and the evidence. TEX. R. CIV. P. 278; *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992). We review a trial court's decision to exclude a jury question under an abuse of discretion standard. *Komet v. Graves*, 40 S.W.3d 596, 603 (Tex. App.—San Antonio 2001, no pet.). When evaluating whether a party is entitled to a jury question, we examine the record for evidence supporting the submission of the question, and ignore evidence to the contrary. *Elbaor*, 845 S.W.2d at 243. Refusal by a judge to submit a question is correct if no evidence exists to warrant the submission of the question. *Id*.

A.     Fraud

To prove a fraud cause of action, it must be established that: 1) a material misrepresentation was made; 2) that was known to be false when made or was asserted without knowledge of its truth; 3) that was intended to be acted upon; 4) that was relied upon; and 5) caused injury to the party who relied on the misrepresentation. *Formosa Plastics Corp. U.S.A. v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 47-48 (Tex. 1998). As a general rule, the failure to disclose information does not constitute fraud unless there is a duty to disclose the information. *In re Seigel*, 198 S.W.3d 21, 29 (Tex. App.—El Paso 2006, orig. proceeding [mand. denied]). Whether such a duty exists is a question of law. *Id*.

Grohman contends that Kahlig engaged in fraud by failing to disclose the plans to her to pursue a conversion of the entities that was first proposed in 1999. Grohman does not cite any law to support her contention that Kahlig had a duty to disclose under the circumstances, and we have found none. Although the conversion was being contemplated in 1999, the uncontroverted evidence established that Kahlig refused to pursue a conversion absent a private letter ruling from the IRS that the conversion would not adversely affect the accounting method relating to the dealership's inventory. The uncontroverted evidence further established that the IRS refused to provide such a private letter ruling in January of 2000, before the parties' divorce was finalized. No evidence was presented that the IRS changed its position until February of 2002, after the parties' divorce. Therefore, the trial court did not abuse its discretion in refusing to submit a question on fraud because Kahlig did not have a duty to disclose the plans to Grohman.

Grohman further contends that Kahlig committed fraud by misrepresenting that he would protect the collateral. Because the promise to protect the collateral was subsumed in the Security Agreement, any alleged misrepresentation by Kahlig would give rise to a fraud claim only if Grohman could establish that Kahlig entered into the Security Agreement with no intention of protecting the collateral. *Formosa Plastics Corp. U.S.A.*, 960 S.W.2d at 46-47. The only evidence Grohman references in her brief is the evidence that Kahlig contemplated the conversion of the entities in 1999 but did not disclose that information. This argument fails for the reason previously given. Grohman does not cite to any evidence raising a fact issue with regard to whether Kahlig intended not to protect the collateral at the time he signed the Security Agreement. Kahlig testified that he always intended to protect the collateral. Many witnesses testified that the collateral was protected because the security interest in the stock became a security interest in the partnership units.

Although the failure to perform a contract is some circumstantial evidence that is to be considered in deciding whether a promisor did not intend to perform when the promise was made, *Weinberger v. Longer*, 222 S.W.3d 557, 562 (Tex. App.—Houston [14th Dist.] 2007, pet. denied), in this case, the evidence established that Kahlig never intended to convert the corporations unless he received a private letter ruling from the IRS which the IRS declined to issue until after the divorce was final. Therefore, based on the evidence presented, the trial court did not abuse its discretion in denying Grohman's request for a jury question on fraud.

B.      Negligence and Gross Negligence

The sum total of Grohman's analysis on the failure to submit questions of negligence and gross negligence is the following sentence, "The court erred by not submitting fraud and therefore the lesser claims of negligence and gross negligence." Accordingly, this complaint has not been adequately briefed and is overruled. *See* TEX. R. APP. P. 38.1(h); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Even if we were to consider the argument Grohman makes in her single sentence, the argument logically fails. Because we have held that the trial court did not err "by not submitting fraud," applying Grohman's logic, the trial court therefore did not err in not submitting "the lesser claims of negligence and gross negligence."

**ATTORNEY'S FEES**

In her final issue, Grohman contends the trial court erred in awarding attorney's fees to Kahlig because his request for declaratory relief impermissibly mirrored her claim for relief. Grohman also contends that the trial court erred in awarding attorney's fees to the entities because they did not submit any issues to the jury and therefore did not prevail on any claims. As we

previously held, because a conversion of the nature undertaken in this case is a disposition under the Security Agreement, the trial court erred in declaring that the Security Agreement allows Kahlig to unilaterally determine the business form of the entities and that Grohman's permission is not required to change the business form in this manner. Because the portion of the trial court's judgment granting the declaratory relief must be reversed, we also must reverse the award of attorney's fees.

## CONCLUSION

The portion of the trial court's judgment ordering that Grohman take nothing on her claims for fraud, gross negligence, and negligence is affirmed. The portions of the trial court's judgment ordering that Grohman take nothing on her breach of contract claim, granting declaratory relief, and awarding attorney's fees are reversed, and the cause is remanded to the trial court for further proceedings.

Alma L. López, Chief Justice