**Sondra L. GROHMAN, formerly known as Sondra Grohman–Kahlig, Petitioner/Cross–Respondent,**

**v.**

**Clarence J. KAHLIG, II; North Park Lincoln–Mercury, Inc., North Park Lincoln–Mercury, Ltd.; North Park Holding, L.L.P.; North Park LM, L.L.C.; Kahlig Enterprises, Inc.; Kahlig Motor, Ltd.; Kahlig Motor Holding, L.L.P.; and Kahlig Motor Management, L.L.C., Respondents/Cross–Petitioners.**

No. 09–0093.

Supreme Court of Texas.

July 2, 2010.

Rehearing Denied Oct. 1, 2010.

**884**

Kathleen Cassidy Goodman, Law Office of Kathleen C. Goodman, PLLC, Richard J. Karam, Law Office of Richard J. Karam, San Antonio, TX, William A. 'Andy' Taylor, Andy Taylor & Associates, P.C., Houston, TX, Gilbert Vara Jr., The Law Office of Gilbert Vara, Jr., San Antonio, TX, for Petitioners.

Lamont Jefferson, Haynes and Boone, LLP, San Antonio, TX, Katharine D. David, Haynes and Boone, LLP, Houston, TX, Thomas R. Phillips, Martha Garrison Newton, Baker Botts L.L.P., Austin, TX, Samuel V. Houston III, William H. Ford, Ford & Massey, P.C., Ruth G. Malinas, Ball & Weed, P.C., San Antonio, TX, for Respondents.

PER CURIAM.

In this case, Sondra Grohman sued her ex-husband, Clarence Kahlig II, for various torts and breach of a Security Agreement (Agreement) entered pursuant to their divorce settlement when he changed the security, stock in his two corporations, into limited partnership units. Kahlig filed a counterclaim seeking a declaration that changing the form of the business entities did not constitute an event of default under the Agreement. At trial, the court submitted the breach of contract claim to the jury, but found no evidence to support the tort claims. The jury found that Kahlig did not breach the Agreement. The trial court entered a take-nothing judgment on the verdict. The court of appeals affirmed the trial court judgment as to the tort claims, but held that Kahlig breached the Agreement as a matter of law and reversed the take-nothing judgment. We hold Kahlig did not breach the Agreement as a matter of law, and Grohman presented no evidence to support her tort claims. Thus, we reverse the court of appeals' judgment in part and affirm in part.

Grohman and Kahlig divorced in 2001. As part of their divorce settlement, Kahlig agreed to pay Grohman approximately $22 million. Kahlig paid Grohman approximately $12.6 million in cash and gave Grohman a promissory note for $9.5 million, to be paid off in annual installment payments of approximately $1 million. As collateral, Kahlig pledged a majority of his stock in two corporations, North Park Lincoln–Mercury, Inc., and Kahlig Enterprises, Inc., totaling seventy percent of the shares outstanding in each corporation.

Kahlig and Grohman entered into a Security Agreement in 2001 to protect Groh-

man's interest in the collateral. The Agreement described the collateral and Kahlig's rights and duties:

> [Kahlig] grants [Grohman] a continuing security interest in and to the following: (a) [70% of the outstanding shares of common capital stock in North Park Lincoln–Mercury, Inc.]; and (b) [70% of the outstanding shares of common capital stock in Kahlig Enterprises, Inc.]; and such shares and all replacements, additions, and substitutions therefor now owned or hereafter acquired by Borrower, plus all cash and non-cash proceeds and all proceeds of proceeds arising from those shares (all of which is individually and collectively hereinafter referred to as "Collateral").
>
> Borrower hereby warrants and agrees that:
>
> 5. Borrower will not sell, transfer, lease, or otherwise dispose of the Collateral or any interest therein except in compliance with the release provisions herein....
>
> 6. Borrower shall at all times keep the Collateral free from any adverse lien, security interest or encumbrance and in good order and repair and will not allow the Collateral to become wasted or destroyed....
>
> 8. Borrower shall have all rights and all responsibilities in respect to the Collateral and may use it in any lawful manner not inconsistent with this Security Agreement.

In 1999, prior to the divorce, Kahlig inquired into the franchise tax benefits of converting his two corporations to limited partnerships. In 2003, he requested a private letter ruling from the IRS seeking confirmation that the conversion would not adversely affect the dealership's inventory accounting method. The IRS confirmed the conversion would not adversely affect the businesses in a favorable private letter ruling six months later. Kahlig converted the corporations to partnerships shortly thereafter.

Kahlig formed two identical plans of reorganization for the two corporations. Kahlig organized a holding company corresponding to each corporation. He contributed his existing stock in each corporation to each holding company. Then, Kahlig converted each corporation to a limited partnership, and each holding company exchanged the shares of corporate stock for equal units of limited partnership interest with the newly formed limited partnership. The corporate shares were canceled once they were replaced with partnership units. The conversions had no effect on Grohman's security interest other than replacing corporate stock with units of limited partnership, and Kahlig's equity in the entities actually increased in value due to the more beneficial franchise tax treatment. Kahlig converted the entities back to corporations in 2007 when the limited partnership form was no longer advantageous for reducing the entities' franchise taxes.

Grohman discovered the 2003 conversions during a second child custody suit against Kahlig. She sued Kahlig for breach of contract in August 2005 alleging that the conversions breached the Agreement because Kahlig agreed not to "sell, transfer, lease or otherwise dispose of the Collateral or any interest therein" without Grohman's consent and further agreed not to "allow the Collateral to become wasted or destroyed."[1] Grohman contended that Kahlig's alleged breach accelerated the

---

1. Kahlig paid the annual payments due on the note each year, including during the pendency of the underlying lawsuit and this appeal. He eventually paid off the remainder of the note in 2008, satisfying his obligations thereunder and releasing Grohman's security interest.

debt at the time of the breach, despite Kahlig's timely payment as agreed. She claimed damages, beyond the amount due under the promissory note, in the form of additional interest on the accelerated principal. Later, Grohman amended her complaint to add fraud, negligence, and gross negligence claims. Kahlig asserted a counterclaim seeking a declaratory judgment that the Agreement did not preclude Kahlig from continuing to unilaterally determine the business form under which his businesses operated, and thus the conversion of the business form was not an event of default under the Agreement.

At trial, the court held that the breach of contract claim was a question of fact and thus submitted it to the jury. The court refused to submit Grohman's tort claims, holding that no evidence supported them. The jury found that Kahlig did not breach the Agreement by converting the corporations to limited partnerships. The trial court entered a take-nothing judgment as to Grohman's claims. It also granted Kahlig's request for declaratory relief and awarded attorney's fees in the amount of $135,757.00 to Kahlig and $82,367.08 to the business entities. *See* Tex. Civ. Prac. & Rem.Code § 37.009 (allowing recovery of attorney's fees in a suit for declaratory judgment).

Grohman appealed, contending the trial court erred by: (1) submitting a question of law to the jury that should have been answered by the trial court; (2) failing to grant a judgment notwithstanding the ver-

dict because she established Kahlig breached of the Agreement as a matter of law; (3) refusing to submit her tort claims to the jury; [2] and (4) awarding attorney's fees. The court of appeals affirmed the trial court's take-nothing judgment on Grohman's tort claims, but reversed the take-nothing judgment on the breach of contract claim and the awards of declaratory relief and attorney's fees. 319 S.W.3d 28. It first held the contract stated unambiguously that the secured Collateral could only be in the form of shares of corporate stock, and it was undisputed that Kahlig converted the corporations to partnerships. *Id.* at 33. Thus, the court held that whether Kahlig breached the contract was a question of law that should not have been submitted to the jury. *Id.* at 33. The submission was not harmless error because the conversion of business entities "disposed of" the Collateral, and Kahlig had indeed breached as a matter of law. *Id.* at 34. Because Kahlig breached the Agreement and the court of appeals reversed the award of declaratory relief, it did not reach Grohman's arguments regarding attorney's fees. It reversed the attorney's fees award and remanded the case to the trial court for a determination of damages. *Id.* at 34.

Both parties appealed. Kahlig argues, as a matter of law, he did not breach the Agreement because it did not prohibit converting his corporations to limited partnerships. Thus, the court of appeals erred in reversing the trial court's judgment because the jury submission was harmless

---

**2.** The trial court denied Kahlig's motion for directed verdict on all of Grohman's claims at the close of Grohman's evidence, but, at the jury charge conference, refused to submit to the jury Grohman's claims except breach of contract and negligence per se. The negligence per se claim was based upon an alleged violation of section 32.33 of the Texas Penal Code, which prohibits a person who has signed a security agreement from harming or

devaluing property with the intent to hinder enforcement of a security interest on the property. The jury found that Kahlig did not commit the acts upon which Grohman based her negligence per se claims, and the trial court similarly held that Grohman take nothing on the claim. The parties do not challenge this portion of the trial court's judgment.

error. Alternatively, he argues the Agreement was ambiguous as to his right to convert the business forms, and thus the trial court was correct to submit the question to the jury. Grohman argues that the court of appeals erred in remanding to the trial court, rather than rendering judgment in her favor, on the breach of contract claim. She also argues the court of appeals erred in affirming the trial court's refusal to submit her tort claims to the jury. We analyze each claim separately.

■■■ A trial court commits error if it submits a question of law to the jury. *Knutson v. Ripson*, 163 Tex. 312, 354 S.W.2d 575, 576 (1962). However, the error is harmless if the jury answers the question of law correctly or if it can be deemed immaterial and disregarded by the trial court. TEX.R.APP. P. 44.1(a)(1); *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex.1994). Contract language should be interpreted by a court as a matter of law if it can be given a certain or definite meaning. *Univ. Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex.2003). If the contract is ambiguous, the party's intent is a question of fact for the jury. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex.1996). Whether a party has breached a contract is a question of law for the court, not a question of fact for the jury, when the facts of the parties' conduct are undisputed or conclusively established. *Sullivan v. Barnett*, 471 S.W.2d 39, 44 (Tex.1971). The court's primary concern when construing a written contract is to ascertain the true intentions of the parties as expressed in the instrument. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex.2005).

We must examine and consider the entire writing "in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.*

The Agreement states that the "Collateral" may not be transferred, disposed of, or destroyed. The Agreement's definition of Collateral guides our interpretation of these provisions. *See Dynegy Midstream Servs., Ltd. P'ship, v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex.2009) ("We give contract terms their plain and ordinary meaning unless the instrument indicates the parties intended a different meaning."). The Agreement defines "Collateral" as shares of stock in North Park Lincoln–Mercury, Inc. and Kahlig Enterprises, Inc., "and *all replacements, additions and substitutions* therefor now owned or hereafter acquired by [Kahlig], plus all cash and non-cash proceeds and all proceeds of proceeds arising from those shares." (emphasis added). Thus, as defined, Collateral encompasses the shares of corporate stock *and* any representation of interest in the companies that could replace or substitute for the shares, so long as Kahlig continued to own them.

The court of appeals held that Kahlig breached the Agreement because he destroyed the corporate stock when he converted it to units of limited partnership and thus "disposed of" the Collateral.[3] Grohman argues Kahlig destroyed the stock in violation of the Agreement because the corporate shares were eventually canceled. The court of appeals agreed, noting as a result of the conversion the shares were canceled and retired and ceased to exist. Because the shares of stock ceased to exist, the court of appeals held they were destroyed.

---

**3.** Whether the term "disposed of" includes the destruction of property and does not require a transfer or alienation of property to a third party has not been directly decided by this Court, but this determination is unnecessary because a separate provision prohibits Kahlig from "allow[ing] the Collateral to become wasted or destroyed."

But the Agreement defines the Collateral more expansively than merely shares of stock. Kahlig breached the Agreement only if the conversion of his corporations to limited partnerships allowed his stock and "such shares and all replacements, additions, and substitutions" to be destroyed. The shares of stock were inevitably canceled, but first they were replaced with units of limited partnership that represented the same interest in the businesses. Kahlig remained the sole owner of his business interest throughout the business conversions, and at no point in the conversions was his interest in the business entities destroyed. The Collateral may have changed form, but it was not destroyed. In fact, Grohman does not dispute that the Collateral's value actually increased.

Grohman contends that Kahlig transferred the Collateral in the conversion because the plan of reorganization involved movement of interest in the companies between Kahlig and holding companies. "Transfer" is defined as:

> Any mode of disposing of or parting with an asset or an interest in an asset, including a gift, the payment of money, release, lease, or creation of a lien or other encumbrance. The term embraces every method—direct or indirect, absolute or conditional, voluntary or involuntary—of disposing of or parting with property or an interest in property.

BLACK'S LAW DICTIONARY 1636 (9th ed. 2009). Despite the fact that the business interest technically moved between Kahlig and his holding companies, Kahlig retained ownership of his entire interest in the companies throughout the conversion. Thus, the Collateral was not transferred, and Grohman's security interest was not impaired.

The Agreement lacks any specific mention of the consequences of a business entity conversion. It gives Kahlig "all rights and all responsibilities in respect to the Collateral ... not inconsistent with this Security Agreement." The most reasonable interpretation of the Agreement, read as a whole to harmonize all of its provisions, is that it did not prohibit Kahlig from converting the business entities, and at no point in the conversion did Kahlig breach the Agreement. Therefore, we hold Kahlig did not breach the Agreement as a matter of law. The trial court committed harmless error by submitting the question to the jury because the jury answered it as the trial court should have. TEX.R.APP. P. 44.1(a)(1); *Spencer,* 876 S.W.2d at 157.[4]

Grohman next contends the trial court erred in refusing her request to submit questions regarding her fraud and negligence claims to the jury. Rule 278 of the Texas Rules of Civil Procedure requires the submission of questions to the jury raised by the written pleadings and the evidence. TEX.R. CIV. P. 278; *Elbaor v. Smith,* 845 S.W.2d 240, 243 (Tex.1992). A court may refuse do so if no evidence exists to warrant its submission. *Elbaor,* 845 S.W.2d at 243.

■ To prove her fraud cause of action, Grohman must establish that Kahlig made a material misrepresentation. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex. 1998). Grohman alleges that Kahlig misrepresented to her in their Agreement that he would refrain from converting his businesses from corporations to limited liability companies. But as we already decided, the Agreement did not prohibit a conversion of the business entities, much less represent that Kahlig would not change

---

**4.** Because we hold that the court of appeals erred in reversing the trial court's judgment we do not reach the issue of whether remand was proper.

the legal form for operating them. There is no evidence that Kahlig made a material misrepresentation.

 Grohman's negligence claims allege Kahlig breached "a duty not to injure her secured interest in the Collateral," and claims damages for that conversion—acceleration of the debt—as provided in the Agreement. Even if Kahlig breached a duty in tort separate from that in contract, when "the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." *Sw. Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex.1991); *see also Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986) ("The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone."). Grohman's action for breach of the Agreement was in contract alone. Thus, the trial court was correct to refuse submission of the tort claims to the jury.

Finally, because the court of appeals erred in finding that Kahlig breached the Agreement, the grounds for reversal of the declaratory relief and attorney's fees award are also in error. Normally we would render judgment on this issue, but here neither party has briefed the issue before this Court. Therefore, we remand the issue of whether Kahlig is entitled to attorney's fees to the court of appeals.

The trial court's erroneous submission of a question of law to the jury was harmless because it was answered as the trial court should have answered it. The proper judgment was rendered and thus there was no grounds for reversal. Accordingly, and without hearing oral argument, TEX. R.APP. P. 59.1, we reverse the court of appeals' judgment as to that issue and render the judgment originally entered by the trial court—Grohman takes nothing on her breach of contract claim. We remand the declaratory relief and attorney's fees issue to the court of appeals. We affirm the court of appeals' judgment that Grohman take nothing on her claims for fraud, gross negligence, and negligence.

Chief Justice JEFFERSON and Justice LEHRMANN did not participate in the decision.