# NO. 12-15-00083-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CARRIZO OIL & GAS, INC.,*<br>*APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | | |
| | § | *JUDICIAL DISTRICT COURT* |
| *BARROW-SHAVER RESOURCES*<br>*COMPANY,* | | |
| *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *OPINION*

Barrow-Shaver Resources Company (BSR) sued Carrizo Oil & Gas, Inc. (COG) for breach of a consent-to-assignment provision in a farmout agreement. Following a jury trial, judgment was rendered against COG for $27,690,466.86 plus prejudgment interest and attorney's fees. In thirteen issues, COG contends the trial court erred. We reverse the trial court's judgment and render judgment that BSR take nothing.

## BACKGROUND

BSR, founded in 1989, operates more than one hundred oil and gas wells. Its business model is to find oil and gas prospects, drill them, and then sell the project when it becomes too big.

COG, founded in 1993, is a publicly traded oil and gas production company valued at 2.4 billion dollars and traded on the NASDAQ. It has approximately 250 employees in operations throughout the United States.

COG owned the Parkey Lease, which was set to expire April 24, 2011. It had drilled three dry holes on the lease, but had no plans for any further drilling operations to extend the lease. In February 2011, COG made contact with BSR at a trade show, suggesting that BSR take a farmout in order to drill on the lease. Negotiations ensued between Stewart Laufer, COG's

southern United States land manager, and Hal Bertram, BSR's vice-president of land and marketing. Both men were highly experienced in the oil and gas field. Laufer had twenty-five years of experience while Bertram had thirty-three years of experience.

After initial discussions, Bertram sent a draft of their agreement to Laufer, one and a half pages in length, that contained no consent-to-assignment provision. Laufer countered with a three page draft agreement which included the following consent-to-assignment provision:

> The rights provided to BSR under this Letter Agreement may not be assigned, subleased or otherwise transferred in whole or in part, without the express written consent of Carrizo which consent shall not be unreasonably withheld.

Bertram followed with a third draft containing the exact same consent-to-assignment provision as in Laufer's counter-proposal. Laufer responded to Bertram with a fourth draft in which the "shall not be unreasonably withheld" language in the consent-to-assignment provision was deleted. Scott Shaver, BSR's managing partner, joined Bertram in vehemently objecting to Laufer for this change in the consent-to-assignment provision.

Laufer told Bertram that COG's legal department in Houston insisted that the reasonableness language be deleted from the consent-to-assignment provision of the farmout agreement. However, Bertram testified at the jury trial that on three separate occasions before the agreement was signed, both over the telephone and face to face, Laufer assured him that COG would give BSR consent to assign the farmout. BSR signed the farmout agreement on March 30, 2012 with the following consent-to-assignment provision:

> The rights provided to BSR under this Letter Agreement may not be assigned, subleased or otherwise transferred in whole or in part, without the express written consent of Carrizo.

BSR immediately drilled on the lease before April 24, 2011, and thus allowed COG to keep the lease alive. Over the next year, BSR spent $22,000,000.00 drilling wells on the lease, but with no tangible results. Chip Johnson, president and chief executive officer of COG, testified during the jury trial that his company was pleased with BSR's performance under the farmout.

Raptor Petroleum II, LLC, approached BSR about an assignment and, after negotiations, Raptor agreed to pay BSR $27,690,466.86 for an assignment of its farmout with COG. On May

7, 2012, BSR contacted COG for its consent to the assignment of the farmout to Raptor. COG eventually demanded BSR pay $5,000,000.00 for the lease before it would give its consent for the assignment from BSR to Raptor. BSR declined to pay COG $5,000,000.00. Without COG's consent to the assignment of the farmout, Raptor withdrew its offer to BSR.

BSR filed suit against COG for breach of contract, fraud, and tortious interference with a contract. During the jury trial, BSR contended any consent-to-assignment provision in the farmout was silent as to the type of consent COG was required to give. COG asserted that the negotiations and previous drafts informed the trial court that the reasonableness clause for the type of consent it would give had been removed and therefore it could withhold consent for any reason or for no reason. COG further contended that the farmout agreement was unambiguous and that the trial court could construe it as a matter of law without resort to a jury acting as a fact finder on what the consent-to-assignment provision meant.

The trial court sided with BSR and, based on the parol evidence rule, did not allow evidence of the parties' negotiations or the four drafts of the farmout agreement to be admitted. The trial court allowed BSR's expert, Professor Bruce Kramer, to testify that the custom in the industry was that consent could not be withheld absent a reasonable concern about the potential assignee's capabilities. COG filed a motion for a directed verdict, following the close of testimony in the trial, asserting that the farmout established as a matter of law that COG could withhold its consent for BSR to assign the farmout agreement to Raptor for any reason, or for no reason. The trial court denied COG's motion and submitted issues to the jury on breach of contract, fraud, and tortious interference with contract. The jury found COG liable on each of those theories. The trial court rendered a judgment based on the jury verdict against COG on BSR's breach of contract claim, awarding BSR $27,690,466.86 plus prejudgment interest and attorney's fees. COG timely appealed.

## BREACH OF CONTRACT

In its first issue, COG contends the trial court erred in failing to construe, as a matter of law, the consent-to-assignment provision to mean that it had an unqualified right to refuse consent for BSR to assign the farmout to Raptor. The trial court erred, the argument continues, by submitting the contract claim to the jury, and there is no evidence supporting the jury's finding of breach. In its third issue, COG argues that the trial court erred when it excluded

3

evidence of the parties' negotiations showing the deletion of the phrase "which consent shall not unreasonably be withheld." It asserts that the parol evidence rule permits evidence of the facts and circumstances regarding a contract's negotiation to demonstrate the parties' intent, and the excluded evidence demonstrates an intent not to impose any conditions on COG's right to withhold written consent.

## Standard of Review

When a party is attacking the legal sufficiency of the evidence supporting a finding on an issue for which it did not have the burden of proof, it must show that no evidence supports the finding. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011). We may sustain a no evidence challenge only when 1) the record discloses a complete absence of evidence of a vital fact; 2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; 3) the evidence offered to prove a vital fact is no more than a mere scintilla; or 4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998). Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Exxon Corp.*, 348 S.W.3d at 215. We credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id*.

We review the trial court's rulings on admissibility of evidence under an abuse of discretion standard. *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 27 (Tex. 2014). We review de novo parol evidence rulings. *Dyer v. Cotton*, 333 S.W.3d 703, 718 (Tex. App.—Houston [1st Dist.] 2010, no pet.). The construction of an unambiguous contract is a question of law for the court, which we may consider under a de novo standard of review. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011).

## Applicable Law

A trial court errs when it does not construe an unambiguous provision as a matter of law, and instead, submits the issue to a fact finder. *Grohman v. Kahlig*, 318 S.W.3d 882, 887 (Tex. 2010) (per curiam); *Transcon. Gas Pipeline Corp. v. Texaco, Inc.*, 35 S.W.3d 658, 665 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). The error is harmless if the jury answers the question as the trial court should have answered it. *Grohman*, 318 S.W.3d at 887. However, extraneous prejudice exists when the answer given by the jury is incorrect as a matter of law. *Hicks v. Pilgrim Poultry, G.P.*, 299 S.W.3d 249, 258 (Tex. App.−Texarkana 2009, no pet.).

Whether the jury answered the question as the trial court would have been required to answer it effectively requires a review of the jury's answer under a no evidence standard. *Id*. at 259.

Texas's strong public policy favoring freedom of contract is firmly embedded in our jurisdiction. *Philadelphia Indem. Ins. Co. v. White*, 490 S.W.3d 468, 471 (Tex. 2016). Absent compelling reasons, courts must respect and enforce the terms of a contract the parties have freely and voluntarily entered. *Id*. As a rule, parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy. *Coyote Lake Ranch, LLC v. City of Lubbock*, 498 S.W.3d 53, 59 (Tex. 2016). This rule applies in the oil and gas context. *See id*. We are not permitted to rewrite an agreement to mean something it did not. *Thedford Crossing L.P. v. Tyler Rose Nursery*, *Inc.*, 306 S.W.3d 860, 867 (Tex. App.—Tyler 2010, pet. denied). We cannot change the contract simply because we or one of the parties comes to dislike its provisions or thinks something else is needed in it. *Id*. Parties to a contract are masters of their own choices and are entitled to select what terms and provisions to include in or omit from a contract. *Id*.

Contract language should be interpreted by a court as a matter of law if it can be given a certain or definite meaning. *Grohman*, 318 S.W.3d at 887. If the contract is ambiguous, the party's intent is a question of fact for the jury. *Id*. Whether a party has breached a contract is a question of law for the court, not a question of fact for the jury, when the facts of the parties' conduct are undisputed or conclusively established. *Id*. A written contract must be construed to give effect to the parties' intent expressed in the text as understood in light of the facts and circumstances surrounding the contract's execution, subject to the limitations of the parol evidence rule. *Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 22 (Tex. 2014).

The parol evidence rule is a rule of substantive law which provides that, in the absence of fraud, accident, or mistake, extrinsic evidence is not admissible to vary, add to, or contradict the terms of a written contract that is facially complete and unambiguous. *Gail v. Berry*, 343 S.W.3d 520, 523 (Tex. App.−Eastland 2011, pet. denied). However, "[t]he [parol evidence] rule does not prohibit consideration of surrounding circumstances that inform, rather than vary from or contradict, the contract text." *Houston Expl. Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011). We may consider the facts and circumstances surrounding a contract, including the commercial or other setting in which the contract was negotiated and

5

other objectively determinable factors that give context to the parties' transaction. ***Kachina Pipeline Co., v. Lillis***, 471 S.W.3d 445, 450 (Tex. 2015).

Negotiations of the parties may have some relevance in ascertaining the dominant purpose and intent of the parties embodied in the contract interpreted as a whole. ***Houston Expl. Co.***, 352 S.W.3d at 469-70 (citing RESTATEMENT (SECOND) OF CONTRACTS § 214(c) (AM. LAW INST. 1979)). Evidence of circumstances can be used to inform the contract text and render it capable of only one meaning. ***Kachina***, 471 S.W.3d at 450.

## Analysis

BSR contends that, because there was no stated qualifier regarding the consent-to-assignment provision, the agreement was silent as to the type of consent COG would give. In furtherance of that theory, BSR introduced evidence, in contradiction of industry custom and usage requiring consent to be reasonably granted, that COG unreasonably withheld consent for Raptor to assume the farmout agreement from BSR. *See **Energen Res. MAQ, Inc., v. Dalbosco***, 23 S.W.3d 551, 557 (Tex. App.−Houston [1st Dist.] 2000, pet. denied) (holding that evidence of custom and usage is admissible to add to a contract that is silent on a particular matter).

COG argues that consideration of the circumstances surrounding the execution of the farmout agreement indicate that the agreement was not silent regarding the type of consent required. *See **Houston Expl. Co.***, 352 S.W.3d at 469. COG contends that prior drafts of the farmout agreement clearly establish that the absence of a restriction on COG's ability to withhold consent was intentional.[1] An earlier draft provided that consent cannot be unreasonably withheld. In a later draft, COG deleted this language. COG argues that evidence of this deletion demonstrates an intent not to impose any conditions on COG's right to withhold consent. It contends that the four drafts leading to the executed farmout agreement render the consent to assign provision capable of only one meaning, that it could withhold its consent for any reason or no reason. *See **Kachina***, 471 S.W.3d at 450.

We agree with COG. Negotiations of a contract can matter in determining whether it is silent on a material term. *See **Houston Expl. Co.***, 352 S.W.3d at 469-70. Here, the previous drafts and negotiations between the parties inform us that the consent-to-assignment provision was not silent as to the type of consent. The farmout agreement unambiguously stated that BSR

---

[1] Although the trial court excluded evidence of the negotiations, including the four drafts exchanged between the parties, COG properly made a bill of exception bringing this to the trial court's attention for the purpose of construing the farmout agreement's consent-to-assignment provision.

could not assign its rights under the agreement "without the express written consent of [COG]." The qualifying language, "which consent shall not be unreasonably withheld," was purposely deleted from an earlier draft. COG's evidence of the negotiations and preliminary drafts of the agreement was not barred from admissibility by the parol evidence rule. *Id*. at 469. Therefore, the trial court abused its discretion by refusing to admit that evidence. *See Aldridge*, 438 S.W.3d at 27.

BSR responds that the provision had to explicitly state that COG had the sole discretion to deny consent and that because it did not, an obligation of good faith and fair dealing was imposed on COG to be reasonable when asked for its consent to assign the farmout agreement. *See* Alex Ritchie, *How Contract Boilerplate Can Bite*, 50 ROCKY MTN. MIN. L. FOUND. J. 243, 248 (2013). While some jurisdictions impose an obligation of good faith and fair dealing in contract disputes, Texas does not. *See English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983). Rather, under Texas law, a consent-to-assignment provision that fails to set a standard by which to measure consent, such as reasonableness or good cause, allows a lessor to withhold consent arbitrarily. Benjamin Robertson, Katy Pier Moore, & Corey F. Wehmeyer, *Consent to Assignment Provisions in Texas Oil and Gas Leases: Drafting Solutions to Negotiation Impasse*, 48 TEX. TECH L.R. 335, 339 (2016); *see also* Louis J. Davis, *Preferential Rights to Purchase and Consents to Assign*, STATE BAR OF TEX. PROF. DEV. PROGRAM, 31st ANNUAL ADV. OIL, GAS & ENERGY RES. LAW COURSE Chapter 12, at 14-15 (2013).

The dissent takes the position that the contract was silent as to when consent could be withheld for any proposed assignment of the farmout agreement. A contract is silent when it fails to address a particular issue. *E.P. Towne Ctr. Partners v. Chopsticks, Inc.*, 242 S.W/.3d 117, 122 (Tex. App.—El Paso 2007, no pet.). The parties had two options when negotiating the consent-to-assignment provision. One was to provide that consent would "not be unreasonably withheld" or the other choice of allowing consent to be arbitrarily withheld. The parties explicitly negotiated out the "not be unreasonably withheld" option. That left only one consent-to-assignment provision for the trial court to construe. That being consent could be arbitrarily withheld.

We hold that the consent-to-assignment provision of the farmout agreement was not silent when we are informed by its surrounding circumstances. The agreement gave COG an unqualified right to refuse BSR's proposed assignment. The trial court erred when it failed to

construe this unambiguous provision as a matter of law but rather submitted it to the jury. *See Transcon. Gas Pipeline Corp.*, 35 S.W.3d at 665. In light of the consent provision in the farmout agreement and the evidence of the circumstances surrounding its execution, there is a complete absence of evidence supporting the jury's finding that COG breached the agreement. *See Exxon Corp.*, 348 S.W.3d at 215. The contract was not ambiguous and therefore no breach of contract issue should have been submitted to the jury. *See Grohman*, 318 S.W.3d at 887. Accordingly, BSR cannot prevail on its breach of contract claim. COG's issues one and three are sustained.

## FRAUD

In its eighth issue, COG contends that its farmout negotiator's purported oral promise to his BSR counterpart that consent would not be unreasonably withheld does not constitute fraud because it is contradicted by the express terms of the agreement. BSR responds that the consent-to-assignment provision was silent on the type of consent, and therefore, there could be no contradiction between the express terms of the farmout agreement and COG's oral representation. As we decided in issues one and three above, the contract was not silent on the type of consent COG had the choice to give.

A plaintiff, such as BSR, seeking to prevail on a fraud claim must prove that (1) the defendant made a material misrepresentation; (2) the defendant knew the representation was false or made the representation recklessly without any knowledge of its truth; (3) the defendant made the representation with the intent that the other party would act on that representation or intended to induce the party's reliance on the representation; and (4) the plaintiff suffered an injury by actively and justifiably relying on that representation. *Exxon Corp.*, 348 S.W.3d at 217.

Here, BSR's Bertram and COG's Laufer, with thirty-three and twenty-five years of experience in the oil and gas industry respectively, negotiated the farmout agreement. When the reasonableness clause was deleted from the consent-to-assignment provision, Bertram brought BSR's managing partner, Scott Shaver, into the negotiations in an attempt to persuade COG to change its mind and reinsert the reasonableness clause. This attempt failed. Shaver went forward in signing the farmout agreement, without any reasonableness clause included.

8

No matter how much confidence Shaver and Bertram had in Laufer's oral promise that COG's consent would not be unreasonably withheld, their reliance is of no consequence in light of the unambiguous term in the written contract that directly contradicts the oral representation. *See DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App.–Houston [14th Dist.] 2003, pet. denied) (op. on reh'g) (en banc). A written contract vitiates any reliance on oral promises. *See Fisher Controls Int'l, Inc. v. Gibbons*, 911 S.W.2d 135, 142 (Tex. App.–Houston [1st Dist.] 1995, writ denied). BSR's attempt to return to the reasonable consent term that it bargained away, albeit reluctantly, must fail. There is no evidence to support the justifiable reliance element of BSR's fraud claim. Therefore, the trial court erred in rendering judgment for BSR on its fraud cause of action. We sustain COG's eighth issue.

## TORTIOUS INTERFERENCE WITH CONTRACT

In its ninth issue, COG contends that its contractual absolute right to withhold consent justified its actions, constituting a defense to the tortious interference with contract claim as a matter of law. In its brief, BSR conceded that if we construed the consent-to-assignment provision as allowing COG to withhold its consent for any reason, or no reason, COG would prevail on this issue. We agree.

Justification is an affirmative defense to the tortious interference claim as a matter of law. *Prudential Ins. Co. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 80 (Tex. 2000). As we explained above, COG had the unqualified right to withhold consent and, therefore, cannot be liable for tortious interference with BSR's contract with Raptor. We sustain COG's ninth issue.

## CONCLUSION

COG was entitled to judgment as a matter of law on BSR's breach of contract, fraud, and tortious interference with contract causes of action.[2] We *reverse* the trial court's judgment and *render* a take nothing judgment.[3]

---

[2] Because COG's first, third, eighth, and ninth issues are dispositive, we need not address its remaining nine issues. *See* TEX. R. APP. P. 47.1.

[3] An appellate court should render judgment after sustaining a complaint as to the legal sufficiency of the evidence. *See* TEX. R. APP. P. 43.3; *Horrocks v. Tex. Dep't of Transp.*, 852 S.W.2d 498, 499 (Tex. 1993) (per curiam).

9

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered January 31, 2017.
*Panel consisted of Worthen, C.J. and Neeley, J.*
*Hoyle, J., concurring in part, dissenting in part.*

Because I believe that the trial court erred in excluding evidence of the prior drafts and negotiations involving COG and BSR, and because I believe that such error was harmful, I concur with the majority's decision to reverse the trial court's judgment. Because I believe that a fact issue remains regarding under what circumstances the contract permits COG to withhold consent to a proposed assignment, I dissent from the majority's decision to render judgment, and I instead would remand the case to the trial court for a new trial.

At its crux, the parties dispute whether COG could withhold its consent to BSR's assignment of its interest so that COG could seek compensation from BSR for the consent. The majority concludes that the negotiations between the parties inform us that COG had an unqualified right to refuse BSR's proposed assignment and thus could withhold consent arbitrarily. Accordingly, the majority determined as a matter of law that COG did not breach the contract. Based on the majority's construction of the consent-to-assignment provision of the farmout agreement between the parties, the majority likewise determined that BSR could not recover under its claims of fraud and tortious interference with contract.

I disagree with the majority that the negotiations between the parties inform us that COG could withhold consent arbitrarily. The majority opinion relates the negotiations between the parties. To summarize those negotiations, (1) BSR offered a farmout agreement with no necessity to obtain COG's consent to an assignment, (2) COG countered with a consent-to-assignment provision in which COG agreed that consent would not be unreasonably withheld, (3) BSR countered, but made no changes to the consent-to-assignment provision, (4) COG countered with a consent-to-assignment provision that did not include specific language that consent would not be unreasonably withheld, (5) BSR objected to the change in the consent-to-assignment provision, (6) COG expressed that it would not reinsert the language that consent would not be unreasonably withheld, and (7) according to BSR, three times before BSR signed the farmout agreement, COG assured BSR that COG would consent if BSR attempted to assign the farmout. The parties then executed a farmout agreement with the following consent-to-assignment provision:

> The rights provided to BSR under this Letter Agreement may not be assigned, subleased or otherwise transferred in whole or in part, without the express written consent of [COG].

Instead of informing us that COG had an unqualified right to refuse BSR's proposed assignment and thus could withhold consent arbitrarily, I believe that the negotiations clarify that the contract requires COG's consent to a BSR assignment but is silent as to the circumstances when COG can properly withhold consent. I agree with the majority that the trial court erred when it prohibited COG from presenting evidence of the negotiations and prior drafts of the farmout agreement. *See **Energen Res. MAQ, Inc. v. Dalbosco**,* 23 S.W.3d 551, 557 (Tex. App.−Houston [1st Dist.] 2000, pet. denied). However, I do not construe the contract as foreclosing BSR's breach of contract claim.

10

We cannot use industry custom and usage to add terms specifically addressed by a written agreement of the parties. *Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 454 (Tex. 2015); *but see* *Holmes v. Beatty*, 290 S.W.3d 852, 858 (Tex. 2009). But, because I construe the contract as silent as to the circumstances when COG can properly withhold consent,[4] I believe that the trial court did not err in submitting the contract claim to the jury. Further, the trial court properly allowed BSR to present evidence of the industry custom and usage on this topic, an issue not reached by the majority. *See* *Energen Res. MAQ, Inc.*, 23 S.W.3d at 557. Before terms are added to a contract based on custom and usage, the custom and usage must be so general and universal in the industry that the parties are charged with knowledge of its existence to such an extent to raise a presumption that they dealt with reference to it. *Va. Power Energy Mktg., Inc. v. Apache Corp.*, 297 S.W.3d 397, 406 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

BSR presented evidence of custom and usage through its expert witness, Bruce Kramer. Kramer possesses a wealth of experience in the oil and gas industry, albeit most of it tangentially as an oil and gas law professor and author on oil and gas law topics. Kramer specifically testified regarding the consent-to-assignment provision in the parties' farmout agreement. Kramer explained that the parties could "use terms of art that speak for themselves but do not answer all of the questions that are raised by the use of such language in a particular oil and gas agreement." Kramer continued that most people in the industry would read these terms of art to have a specific meaning.

Kramer contended that because the farmout agreement between the parties does not state the circumstances under which COG could withhold consent, the custom and practice of the oil and gas industry would add language to the clause that consent would be given unless COG had a concern regarding the financial status, technical expertise, or general reputation of the proposed assignee. Kramer based his opinion to add language to the consent-to-assignment provision on his study of oil and gas law as well as his discussions with people in the industry. He claimed that parties experienced in the oil and gas industry should know the language was implied because it was a basic principle in the industry. Based on the language that he added to the agreement because of custom and practice of the industry, Kramer concluded that COG breached the contract by deciding to withhold consent when BSR would not pay COG for the consent.

BSR presented other testimony from those in the industry that a party is expected to provide consent to an assignment unless the party has some concern regarding the assignee. And, Chip Johnson, the president of COG, acknowledged that nothing in the farmout agreement gives specific guidance as to the circumstances under which COG could withhold consent.

Based on the wording of the farmout agreement and the evidence presented at trial, I would hold that BSR raised a fact issue regarding whether custom and usage limited the circumstances under which COG could withhold consent to an assignment. Thus, I would not render judgment on behalf of COG as to BSR's breach of contract claim. Because I have not interpreted the contract as the majority has, I likewise would not render judgment on behalf of COG as to BSR's fraud and tortious interference claims.

However, neither can I affirm the trial court's judgment. The jury sided with BSR, but the jury never saw the entire picture. The unadmitted evidence of negotiations and drafts of the agreement was especially probative of whether BSR's claimed additional language to the consent-to-assignment provision should have been included based on custom and usage in the

_____

[4] Expert witnesses presented by both COG and BSR likewise construed the contract as silent as to the circumstances under which COG could withhold consent.

11

industry. Because the evidence was crucial to the issue, the trial court's exclusion of the evidence was harmful error. Tex. R. App. P. 44.1; *see State v. Cent. Expressway Sign Assoc.*, 302 S.W.3d 866, 874 (Tex. 2009) (held that erroneously excluded evidence directly related to the central issue in the case generally is harmful). Accordingly, I would remand the case for a new trial.

Therefore, I respectfully concur in part and dissent in part to the majority's opinion.


**BRIAN HOYLE**
Justice


(PUBLISH)


12



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

JANUARY 31, 2017

NO. 12-15-00083-CV

**CARRIZO OIL & GAS, INC.,**
Appellant
V.
**BARROW-SHAVER RESOURCES COMPANY,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 12-2565-A)

THIS CAUSE came to be heard on the oral arguments, appellate record and the briefs filed herein, and the same being considered, it is the opinion of this court that there was error in the judgment of the court below, and that the same should be reversed and judgment rendered.

It is therefore ORDERED, ADJUDGED and DECREED by this court that the judgment of the trial court in favor of Appellee, **BARROW-SHAVER RESOURCES COMPANY**, be, and the same is, hereby **reversed** and judgment **rendered** that the Appellee take nothing.

It is FURTHER ORDERED that all costs in this cause expended both in this court and the trial court below be, and the same are, adjudged against the Appellee, **BARROW-SHAVER RESOURCES COMPANY,** for which let execution issue; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*