

IN THE
TENTH COURT OF APPEALS

No. 10-17-00005-CV

STAN MARTIN AND ROMA MARTIN,

Appellants

v.

COTTONWOOD CREEK CONSTRUCTION, LLC,

Appellee

From the 249th District Court
Johnson County, Texas
Trial Court No. C201300177

# OPINION

Stan and Roma Martin contracted with Cottonwood Creek Construction, LLC to build the Martins a house. The estimated cost was over $880,000, and Cottonwood's estimated fees were over $120,000. When the Martins failed to pay two draws, Cottonwood suspended further work on the project. The Martins then retained another contractor to finish the house.

Cottonwood sued the Martins for breach of contract. The Martins filed a

counterclaim against Cottonwood and a claim against a third party.[1] After a jury trial, the trial court rendered judgment against the Martins on all the claims alleged by the parties.

On appeal, the Martins raise five issues. Because we overrule each issue, the trial court's judgment is affirmed.

## ANTICIPATORY REPUDIATION/LOST PROFITS

In their first issue, the Martins assert the trial court erred in submitting Question 3 and in refusing to submit their Requested Question 4 on what they believed to be Cottonwood's claim of anticipatory repudiation. Specifically, the Martins assert that the inclusion of the ability to recover damages for lost profits in Question 3 without another question submitted about repudiation, was error. Alternatively, the Martins argue in their second issue that if there was no error in the wording of Question 3, nevertheless there was error in submitting it because there was no evidence to support the value damages found by the jury.

Initially, we note that a request for submission is the method of preserving the right to complain of the omission of, or failure to submit, an issue or question which is relied on by the *complaining party*. *Lyles v. Tex. Employers' Ins. Asso.*, 405 S.W.2d 725, 727 (Tex. Civ. App.—Waco 1966, writ ref'd n.r.e.). An objection, on the other hand, is the proper method to preserve a complaint as to (1) an issue or question *actually submitted*, but claimed to be defective; or (2) the *failure to submit*, where the ground of recovery or

---

[1] The Martins have no issue on appeal regarding the third-party claim.

defense is relied on by the *opposing party*. *Id*. *See Religious of Sacred Heart v. Houston*, 836 S.W.2d 606, 614 (Tex. 1992).

> At the charge conference, the Martins made the following objection to Question 3:

> Objection is made to Pattern Jury Charge Question No. 3 for the reason that it says, Cottonwood Creek may not recover – may recover not only for the value of the work actually done. There's been no evidence of the value of the work performed before this jury, and that assumes there was a value for work performed. Objection is further made that … for any profit Cottonwood Creek would have made had it been permitted to complete the contract. That assumes that the Martins repudiated the contract and stopped Cottonwood Creek from completing the contract. And that assumes a fact that has not been established, although pled by the Plaintiff. The Plaintiff has not submitted an issue for that. Therefore, I submit Issue No. 4, Question No. 4 for the jury on anticipatory repudiation.

> \*\*\*

> Objection is made to the lost profits, 12 percent fee for remaining contract balance. It assumes as an anticipatory repudiation by the Martins which requires an unconditional repudiation of which there's no evidence of and nevertheless assumes that before asking the jury to receive a lost profit.

The Martins objected to the submission of Question 3 because, according to the Martins, the question was defective in that it included the ability to recover damages for lost profits which assumed repudiation by the Martins.

The Martins' request for submission of Requested Question 4 regarding anticipatory repudiation, however, did not preserve their complaint for appellate review because anticipatory repudiation was not an issue relied upon by the Martins, *i.e.* the complaining party. The Martins were required to *object* to the trial court's failure to submit a question on anticipatory repudiation because it was, arguably, a ground of recovery relied on by Cottonwood. The Martins did not object. Thus, any complaint about the trial court's failure to submit the Martins' Requested Question 4 on anticipatory

repudiation is not preserved; and we need not decide that part of the Martin's first issue.[2]

As to the lost profits portion of the Martins' first issue, they complain that the trial court improperly included lost profits in Question 3. In substance, the Martins argue on appeal that the damages question improperly mixed breach of contract damages with damages only recoverable under quantum meruit. Question 3 provided, in relevant part:

> What amount of money, if paid in cash today, would fairly and reasonably compensate Cottonwood Creek for the Martins' failure to comply with the Agreement?
>
> You are instructed that Cottonwood Creek may recover not only for the value of the work actually done, but also for any profit Cottonwood Creek would have made had it been permitted to complete the contract. Therefore, in answering Question No. 3, consider the following elements of damages, if any, and none other.
> ***
> Lost Profit (12% Fee) for Remaining Contract Balance:  $65,514.35

The Martins argue that an attempt to recover lost profits is an attempt to recover on the contract; but because the trial court instructed the jury that Cottonwood could recover for the "value" of the work done, this was a recovery in quantum meruit for which Cottonwood could not recover in addition to lost profits. The Martins contend the Court should have used the phrase "work done" rather than the phrase "value of the work done."

---

[2] Additionally, we note that the jury was asked whether the Martins failed to comply with the Agreement, which was Question 1, and answered, "Yes." In Question 2, the jury was asked whether the failure to comply with the Agreement was excused by a prior material breach by Cottonwood, which the jury answered, "No." Under the conditional submission of Question 3, the jury was then asked about damages. Thus, while the Martins complain about the failure to submit a question on anticipatory repudiation of a contract, which is one method of establishing a breach of contract, it is not the only type of breach. The Martins fail to address why Question 1 and Question 2 do not properly set up Question 3 for damages for their breach of contract as found by the jury.

But that was not the objection the Martins made to the trial court. There, the Martins only objected that there was "no evidence of the value of the work performed before this jury, and that assumes there was a value for work performed." The Martins did not object that "value" corresponded to a recovery in quantum meruit which is inconsistent with a recovery for breach of contract. In order to preserve error for appellate review, a party's argument on appeal must comport with its argument in the trial court. *See In re D.E.H.*, 301 S.W.3d 825, 829 (Tex. App.—Fort Worth 2009, pet. denied); *Kershner v. State Bar of Tex.*, 879 S.W.2d 343, 347 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Because the objection asserted at trial does not comport with the complaint argued on appeal, the second portion of the Martins' first issue that an improper measure of damages was submitted is not preserved. *See* TEX. R. APP. P. 33.1(a).

Accordingly, the Martins' first issue is overruled.

## VALUE

Next, the Martins assert there is no evidence in the record to support the amounts awarded by the jury of the "value of the work actually done" in response to the first eight elements of damages in Question 3.

As discussed above, the Martins equate the word "value" in Question 3 with "value" for a recovery in quantum meruit. Quantum meruit is an equitable theory of recovery which is based on an implied agreement to pay for benefits received. *Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). The correct measure of damages to recover on quantum meruit is the "reasonable value" of work performed and the materials furnished. *M.J. Sheridan & Son Co. v. Seminole Pipeline Co.*, 731 S.W.2d 620, 625

(Tex. App.—Houston [1st Dist.] 1987, no pet.). But Cottonwood did not sue on quantum meruit, it sued for breach of contract. Where a valid express contract covering the subject matter exists, there can be no quantum meruit; and thus, recovery on both is inconsistent. *Id*. at 624. Thus, that there may be no evidence of "value" as would be necessary for a recovery in quantum meruit is of no consequence. There was no need for Cottonwood to prove the type of "reasonable value" as required to recover in quantum meruit.[3]

The Martins' second issue is overruled.

**ABATEMENT**

In their third issue, the Martins contend the trial court erred in abating the underlying case pursuant to Chapter 27 of the Texas Property Code (Residential Construction Liability Act; the "RLCA"), refusing to entirely lift the abatement, and refusing to submit all of the Martins' defect claims to the jury.[4] We divide this issue into two parts: the abatement and the submission of the defect claims.

*Abatement under the RCLA*

In this part of the issue, we are called upon to determine, as an issue of first impression, the manner in which a counterclaim for construction defects affects the procedures for abatement and settlement under the RCLA. We review a trial court's

---

[3] While perhaps not the best language to use, the instruction comes directly from a construction breach of contract case, *Tower Contracting Co. v. Flores*, 294 S.W.2d 266, 272-73 (Tex. Civ. App.—Galveston 1956) *modified on other grounds*, 302 S.W.2d 396 (1957) ("the proper measure of damages, where the contractor sues on the contract, is … the contract value of the work actually done plus any profit the contractor would have made had he been permitted to complete the performance of his contract").

[4] The Martins only complain about the abatement of their counterclaims against Cottonwood. They do not complain about the abatement of their third-party claim. Thus, we will not discuss the propriety of the abatement of the third-party claim.

action on a plea in abatement for abuse of discretion. *Dolenz v. Cont'l Nat'l Bank of Fort Worth*, 620 S.W.2d 572, 575 (Tex. 1981); *F&S Constr., Inc. v. Saidi*, 131 S.W.3d 94, 98 (Tex. App.—San Antonio 2003, pet. denied).

Generally, the RCLA requires a claimant to provide written notice to a contractor "specifying in reasonable detail the construction defects that are the subject of the complaint" at least 60 days before the claimant "initiates an action" against the contractor. TEX. PROP. CODE ANN. § 27.004(a) (West 2014). In addition to the notice requirement, the contractor must be given (1) a reasonable opportunity to inspect the property that is the subject of the complaint and (2) the opportunity to make a reasonable offer of settlement, including an agreement by the contractor to repair or have repaired any construction defect described by the claimant. *See id.* The notice provision activates a timetable for an inspection of the property and the offer of settlement which, if reasonable, affects the claimant's potential recovery under the Act. *See id.; In re Anderson Constr. Co.*, 338 S.W.3d 190, 192 (Tex. App.—Beaumont 2011, orig. proceeding).

A trial court is required to abate an action if, after a hearing, the court finds the claimant failed to (1) provide the required notice, (2) give the contractor a reasonable opportunity to inspect the property, or (3) follow the procedures specified in 27.004(b) (regarding the offer of settlement and its related procedures). *See* TEX. PROP. CODE ANN. § 27.004(a), (d) (West 2014). An action is automatically abated without a court order beginning the eleventh day after the date a verified motion to abate is filed if the motion is not controverted by an affidavit filed by the claimant. *See id.* (d).

Cottonwood filed a verified motion to abate the Martins' counterclaim alleging

they "failed to comply with the notice, inspection and settlement procedures of the RCLA." The Martins did not file a controverting affidavit. After a hearing, the trial court ordered the counterclaim abated because the Martins failed to file a controverting affidavit but also noted that the counterclaim had been automatically abated because of the same failure.

The Martins, however, were not required to controvert the motion to abate with an affidavit. The Martins did not "initiate an action" as provided by subsection (a). *See* TEX. PROP. CODE ANN. § 27.004(a) (West 2014). They filed a counterclaim which is governed by subsection (c). *Id*. (c). Under subsection (c), notice is not required, and the timetables for the opportunity to inspect and the offer of settlement are recalculated.[5] *Id*. Further, the abatement procedure in subsection (d) does not apply to actions governed by subsection (c).

Subsection (d) provides, in relevant part:

> The court … shall abate an action governed by this chapter *if Subsection (c) does not apply* and the court … after a hearing, finds that the contractor is entitled to abatement because the claimant failed to…provide the notice or failed to give the contractor a reasonable opportunity to inspect the property as required by Subsection (a), or failed to follow the procedures specified by Subsection (b). An action is automatically abated without the order of the court … beginning on the 11th day after the date a motion to abate is filed if the motion: … (2) is not controverted by an affidavit filed by the claimant before the 11th day after the date on which the motion to abate is filed.

TEX. PROP. CODE ANN. § 27.004(d) (West 2014) (emphasis added). Thus, because

---

[5] The pleadings of the counterclaim act as notice and are required to "specify in reasonable detail each construction defect that is the subject of the complaint." *Id*. (c). Cottonwood did not, and does not, contend the Martins failed to reasonably detail each of the construction defects in their counterclaim.

subsection (c) applies to the Martins' counterclaim, subsection (d) does not.

Cottonwood disputes this interpretation of subsection (d). Relying on *In re Anderson Constr. Co.*, 338 S.W.3d 190 (Tex. App.—Beaumont 2011, orig. proceeding), Cottonwood contends that while the Martins were excused from providing notice under subsection (c), they were not excused from giving Cottonwood an opportunity to inspect the alleged defects or offer a settlement. Thus, its argument continues, the Martins were still subject to the automatic abatement provision of subsection (d) because they did not file a controverting affidavit.

However, Cottonwood's reliance on *In re Anderson* is misplaced. *In re Anderson* was not a counterclaim case and cannot be used as support for the procedure to be used when defects are raised in a counterclaim; *i.e.* when subsection (c) applies.

Further, in construing a statute, words and phrases are read in context and construed according to the rules of grammar and common usage. TEX. GOV'T CODE ANN. § 311.011(a) (West 2013). Initially, we note that subsection (d) is one full paragraph composed of two sentences. In the first sentence, an abatement by court order is limited to actions where "Subsection (c) does not apply." The very next sentence discusses an automatic abatement. There is no need to repeat the phrase "if Subsection (c) does not apply" because a basic rule of thumb in paragraph construction is to keep one idea to one paragraph. *See* Purdue Online Writing Lab, On Paragraphs, https://owl.english.purdue.edu/owl/resource/606/01/. Our interpretation might have been different had the second sentence been in a new paragraph. *See id.* ("If you begin to transition into a new idea, it belongs in a new paragraph."). It was not. Thus,

reading the words and phrases of the statute in context and construing them according to the rules of grammar and common usage as required, we find the statute is clear: the entirety of subsection (d) does not apply when construction defects are raised in a counterclaim.

Subsection (d) was the only basis upon which Cottonwood sought an abatement.[6] Thus, the trial court abused its discretion in issuing an abatement order because the subsection (d) abatement procedure did not apply to the Martins' counterclaim. For the same reason, the trial court also abused its discretion in finding that the Martins' counterclaim was automatically abated and in refusing to lift the abatement in its entirety.

*Failure to Submit All Claims*

We next determine what, if any, effect the abatement had on the presentation of the Martins' counterclaim to the jury. Rule 278 of the Texas Rules of Civil Procedure requires the submission of questions to the jury raised by the written pleadings and the evidence. TEX. R. CIV. P. 278; *Grohman v. Kahlig*, 318 S.W.3d 882, 888 (Tex. 2010); *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992). A court may refuse to submit a requested jury question if no evidence exists to warrant its submission. *Grohman*, 318 S.W.3d at 888; *Elbaor*, 845 S.W.2d at 243. A judgment will not be reversed for charge error, however, unless the error was harmful because it probably caused the rendition of an improper verdict or probably prevented the petitioner from properly presenting the case to the appellate court. *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex.

---

[6] Subchapter (c) has its own provisions for abatement which do not include automatic abatement.

2009); *see* TEX. R. APP. P. 44.1.

According to the pleadings, the Martins alleged that the retaining wall was installed improperly, the concrete slab failed to match with the wooden floor, the concrete slab in the garage tilted backwards and water puddled in the garage, the soffit over the front door was incorrectly placed, the bay window was built without a ledge, and several windows were damaged or would not open or shut. The Martins requested a question to be submitted to the jury on all of those claims except the claim regarding the soffit.[7] The request was refused. Instead, the trial court submitted Question 8 which identified three general types of claimed construction defects. Those three types were: 1) the north retaining wall; 2) the foundation; and 3) the installation of the windows.

Assuming without deciding evidence supported the Martins' requested jury question, we find the trial court did not err because the jury question as submitted did not differ in substance from the Martins' requested jury question. First, the claim regarding the retaining wall was clearly submitted in Question 8. Second, the parties, witnesses, and counsel used the word "foundation" interchangeably with the word "slab." Thus, substantively, the claims regarding the slab, the slab's match-up with the wooden floor, and the slope in the garage floor were submitted in Question 8 under the general label of "foundation." Third, the majority of the testimony about the windows dealt with the installation, or lack thereof, of a brick ledge for the bay window while a

---

[7] Specifically, the Martins' proposed question listed the alleged defects as "the retaining wall," "the brick ledge in the bay window," "the concrete slab," "the concrete slab matched the wooden floor," "the garage floor," and "windows."

Martin v. Cottonwood Creek Construction, LLC                                                    Page 11

minority of the testimony dealt with the installation of windows that were cracked or unable to be opened. Thus, the window claims were substantively submitted in Question 8 under the general category of "installation of windows."

A judgment shall not be reversed because of the failure to submit other and various phases or different shades of the same question. TEX. R. CIV. P. 278. Because Question 8 does not differ in substance from the Martins' requested question, we cannot say the trial court's failure to submit the Martins' defect claims in the form of the question requested by the Martins was error. *See id.*

The Martins' third issue is overruled.

### GOOD AND WORKMANLIKE MANNER

We next address whether the trial court erred in refusing to submit the Martins' Requested Question 8. The Martins contend that Question 8 as submitted to the jury— "Did Cottonwood Creek fail to perform its work in a good and workmanlike manner?"— was incomplete. The Martins' Requested Question 8 asked whether Cottonwood "failed to *design and build the house pursuant to the plans* in a good and workmanlike manner[.]" (Emphasis added). Submission of the Requested Question 8 was refused by the trial court.

The Martins' pleadings defined "good and workmanlike manner" in terms of "work" and "buil[d]." The term "design" was not used. Further, the Martins alleged in their pleadings that the contract between the parties defined "good and workmanlike manner" in terms of "work" rather than "design and build." Thus, the Martin's Requested Question 8 was not raised by the written pleadings, and the trial court did not

Martin v. Cottonwood Creek Construction, LLC                                                  Page 12

err in refusing to submit it.  *See* TEX. R. CIV. P. 278; *Grohman v. Kahlig*, 318 S.W.3d 882, 888 (Tex. 2010); *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992).[8]

The Martins' fourth issue is overruled.

**ATTORNEY'S FEES**

In their fifth, and final, issue, the Martins request that, if this Court reverses the damages judgment, we also reverse the award of attorney's fees.  Since we did not reverse the damages judgment, we do not reverse the attorney's fees award.

The Martins' fifth issue is overruled.

**CONCLUSION**

Having overruled each issue raised on appeal, we affirm the trial court's judgment.


TOM GRAY
Chief Justice


Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed October 3, 2018
[CV06]



---

[8] Additionally, the question as requested by the Martins is nothing more than a different shade of the question actually submitted and thus, was not error.  *See* TEX. R. CIV. P. 278.