

**IN THE**
**TENTH COURT OF APPEALS**

**No. 10-19-00190-CV**

**IN THE INTEREST OF T.B., AN ADULT**

**From the 272nd District Court**
**Brazos County, Texas**
**Trial Court No. 16-03580-CRF-272**

## OPINION

T.B. appeals from the trial court's Order for Extended Mental Health Services wherein he was directed to receive in-patient mental health treatment for one year. Because his due process rights were not violated, the trial court did not abuse its discretion in limiting voir dire or in refusing a requested jury instruction, and T.B.'s complaint regarding a compelled invocation of his Fifth Amendment right was not preserved, the trial court's Order is affirmed.

**BACKGROUND**

T.B. was indicted for stalking. *See* TEX. PENAL CODE ANN. § 42.072. On July 12, 2018, the trial court found T.B. to be incompetent to stand trial and ordered that he be committed for restoration to competency. On March 26, 2019, based on the final report

from Austin State Hospital, the trial court determined that T.B. continued to be incompetent to stand trial and was not likely to regain competency in the foreseeable future. With the felony charge still pending, a civil commitment jury trial was held. Following the trial, the jury determined that T.B. was a person with mental illness and met the criteria for court-ordered mental health services. Based on the jury's findings, the trial court ordered extended mental health services for T.B.

## DUE PROCESS

In his first issue, T.B. contends he was denied due process of law when the commitment proceeding was conducted in violation of his right to be present. Specifically, T.B. contends the 14th Amendment[1] required his presence at all the judicial proceedings conducted for commitment purposes, the Mental Health Code codifies that right, and neither T.B. nor his counsel waived that right.

### *Law*

Involuntary mental health commitment proceedings are civil, rather than criminal, in nature, and all the procedural requirements of a criminal hearing are not strictly applicable. *See Campbell v. State*, 85 S.W.3d 176, 180 (Tex. 2002); *In the Interest of K.C.*, 563 S.W.3d 391, 397 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *In re G.D.*, 10 S.W.3d 419, 422 (Tex. App.—Waco 2000, no pet.); *see also Addington v. Texas*, 441 U.S. 418, 428, 99 S. Ct. 1804, 1810, 60 L. Ed. 2d 323 (1979). Nevertheless, commitment proceedings remain subject to the Due Process Clause which, generally, requires a person be present with

---

[1] Although counsel objected under various provisions of both the Texas and United States Constitutions and the Texas Code of Criminal Procedure, T.B. does not complain about those other provisions on appeal.

counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine witnesses, and to offer evidence of his own. *See Specht v. Patterson*, 386 U.S. 605, 608, 610, 87 S. Ct. 1209, 18 L. Ed. 2d 326 (1967). Claims regarding deprivation of constitutional rights present questions of law which we review *de novo*. *State v. Hodges*, 92 S.W.3d 489, 494 (Tex. 2002); *In the Interest of K.C.*, 563 S.W.3d 391, 396 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *Scally v. Tex. State Bd. of Med. Exam'rs*, 351 S.W.3d 434, 446 (Tex. App.—Austin 2011, pet. ref'd).

Due process is a flexible concept, and the due process right of a party to be present at a civil trial is not absolute. *In re M-I L.L.C.*, 505 S.W.3d 569, 576 (Tex. 2016); *United States Gov't v. Marks*, 949 S.W.2d 320, 326 (Tex. 1997). Courts have discretion to exclude parties in limited circumstances when countervailing interests overcome a presumption in favor of participation. *In re M-I L.L.C.*, 505 S.W.3d at 575. At a minimum, due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995). What process is due depends on a consideration of three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *United States Gov't v. Marks*, 949 S.W.2d 320, 326 (Tex. 1997); *Than*, 901 S.W.2d at 930.

*Facts*

The record reflects that T.B. was disruptive even before his trial began.  At two pretrial hearings, he talked back to the trial court and interrupted his attorney when his attorney tried to speak.  Before voir dire, at another pretrial hearing, the trial court warned T.B.:

> You're not going to be permitted to disrupt this trial.  And if you start doing it, if you start speaking when you're not supposed to speak, I'm going to warn you. And if you keep doing it, I'm going to have to remove you from the courtroom. You understand that?

Later, when T.B.'s counsel tried to address the court, T.B. stated, "Do not interrupt."  The trial court counted that response as the first incident and warned T.B. that, "If you continue to make that statement and talk over your attorney, I'm going to have to remove you from the courtroom."  Nevertheless, T.B. talked over his attorney whenever the attorney tried to speak.  T.B. was removed from the courtroom for the remainder of the pretrial hearing.[2]

At the beginning of voir dire, before the panel was brought into the courtroom, the trial court admonished T.B. that if he continued to try to disrupt the hearing in front of the jury, he would be removed again and placed in the conference room.  T.B. then refused to sit down in the courtroom.  At the urging of counsel for both parties, T.B. was allowed to remain in the courtroom and remain standing until the jury was brought in.  Once the jury panel was seated, T.B. was instructed by the trial court to not be disruptive.

---

[2] Every time T.B. was removed from the courtroom, he was placed in a conference room adjacent to the courtroom which was equipped with both video and audio so T.B. could hear and watch the proceedings.

However, T.B. began addressing the panel. The trial court warned T.B. that he would be removed from the courtroom if he continued to be disruptive. T.B. again addressed the panel. T.B. was removed. At this time, T.B.'s attorney objected to T.B.'s removal from the courtroom pursuant to "Article 1, Section 19 of the Texas Constitution; Article 1.05 of the Texas Code of Criminal Procedure; Article 1, Section 10 and 15 of the Texas Constitution, the Sixth and Fourteenth Amendments of the United States Constitution ensuring trial and effective counsel; and the Fifth and Fourteenth Amendments of the United States Constitution regarding due process." Counsel was given a running objection to the removal.[3]

Disruptions by T.B. necessitating his removal occurred throughout voir dire. T.B. would be brought into the courtroom when his presence, with or without the jury present in the courtroom, was believed to be necessary. When T.B. was disruptive, the trial court would warn about removal. When T.B. continued to be disruptive, only then was he removed from the courtroom. The next day, the same procedure occurred. T.B. was brought into the courtroom when his presence was deemed necessary,[4] warned, was disruptive, and was removed. The third day, again the same procedure occurred.[5]

---

[3] Although the State on appeal suggests that T.B.'s complaint was not preserved each day by the running objection, it is clear from the record that the trial court and the State understood counsel objected to the removal each time T.B. was removed from the courtroom.

[4] Such as at pretrial with no jury present, when the jury was brought into the courtroom for the morning, when the first witness was about to testify and after the lunch break, and to determine whether T.B. would testify after the State rested.

[5] T.B. was in the courtroom for pretrial, to determine again if T.B. wished to testify, to rest his case, for arguments, and for the verdict. He was removed after disrupting the proceedings each time.

*Application*

In this case, there is no question that T.B. had a significant interest in being present during his involuntary commitment hearing. His liberty was at stake. However, because T.B. potentially could be a danger to himself or others if not committed, the State's interest in proceeding with the commitment hearing was substantial. Further, the procedures used by the trial court protected T.B.'s interest as much as possible given T.B.'s refusal to follow the court's instructions and the need for an efficient and orderly hearing. At every stage of the hearing, T.B. was given an opportunity to follow the court's instructions and remain in the courtroom. When he did not, T.B. was removed to an adjacent room where he could see and hear the proceedings. No other safeguards were suggested which would protect T.B.'s interest as much as or more than the procedure used. On the whole, T.B.'s rights were fully protected, and the trial court's procedure did not violate T.B.'s constitutional right to due process under the 14th Amendment to the United States Constitution.

T.B. also complains in this issue that the procedure used by the trial court violated section 574.031(c) of the Health and Safety Code because neither T.B. nor his counsel waived T.B.'s right to be present at the hearing. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.031(c). This was not part of the objection raised by T.B. at the hearing. Accordingly, this complaint is not preserved for our review. *See* TEX. R. APP. P. 33.1.

T.B.'s first issue is overruled.

**LIMITING VOIR DIRE**

In his next two issues, T.B. asserts that the trial court abused its discretion by improperly limiting T.B.'s voir dire examination on the Fifth Amendment (Issue Two) and on the jury's fact-finding role in relation to outpatient treatment (Issue Three). We first address Issue Three.

*Standard of Review*

Litigants have the right to question potential jurors to discover biases and to properly use peremptory challenges. *In re Commitment of Hill*, 334 S.W.3d 226, 228 (Tex. 2011). This right is "constrained by reasonable trial court control." *Id.* at 228-29 (quoting *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 50 (Tex. 2006)). Thus, refusals to allow lines of questioning during voir dire are reviewed under an abuse of discretion standard. *Id.* at 229. However, the proper discretion inquiry turns on the propriety of the question. *Id.* "[A] court abuses its discretion when its denial of the right to ask a proper question prevents determination of whether grounds exist to challenge for cause or denies intelligent use of peremptory challenges." *Id.* (quoting *Babcock v. Northwest Memorial Hospital.*, 767 S.W.2d 705, 709 (Tex. 1989)). A party preserves error by a timely request that makes clear—by words or context—the grounds for the request and by obtaining a ruling on that request, whether express or implicit. TEX. R. APP. P. 33.1; *Id.* Thus, a party can preserve error by asking a specific and proper question, stating the basis on which it sought to ask that question, and obtaining an adverse ruling from the trial court. *Id.*; *see Babcock*, 767 S.W.2d at 708.

*Outpatient Treatment*

In his third issue, T.B. complains that the trial court should have allowed T.B. to question the prospective jurors on the jury's limited role as fact finders regarding possible outpatient treatment. T.B. contends the trial court could enter an order committing a person to outpatient mental health services if the trier of fact finds the person meets the statutory commitment criteria. Thus, his argument continues, the inquiries on this subject represented the law applicable to the case which is a proper subject for voir dire examination. *See, generally* TEX. R. CIV. P. 278.

Chapter 46B of the Texas Code of Criminal Procedure, entitled Incompetency to Stand Trial, applies to a defendant charged with a felony or with a misdemeanor punishable by confinement. TEX. CODE CRIM. PROC. ANN. art. 46B.002. If a defendant is found incompetent to stand trial and if all charges pending against the defendant are not dismissed, as is the case with T.B., the trial court shall proceed to a civil commitment under Subchapter E of Chapter 46B. *Id*. 46B.084(e). Proceedings for commitment of the defendant to court-ordered mental health services are governed by the Mental Health Code, Subtitle C, Title 7, Health & Safety Code, to the extent that the Mental Health Code applies and does not conflict with Chapter 46B. *Id*. 46B.102(b). In this situation, an application for court-ordered mental health services is not required. *Id*. (d).

Under Subtitle C of the Health and Safety Code, a hearing for extended mental health services must be before a jury unless the right to a jury is waived by the proposed patient or the patient's attorney. TEX. HEALTH & SAFETY CODE ANN. § 574.032(b). A jury determines if a proposed patient is a person with mental illness and meets the criteria for

court-ordered mental health services, but a jury may *not* make a finding about what type of services will be provided to the patient.[6] *Id.* § 574.032(f).

In this case, outpatient services were never an option for T.B. Four days before trial and pursuant to section 574.007(d) of the Health & Safety Code,[7] the State notified T.B. and his attorney that the State would be requesting the commitment of T.B. to extended inpatient services. The State also explained to T.B. that outpatient services were not appropriate for T.B. because T.B. refused mental health treatment, or to even acknowledge his mental illness, and because the State did not have suitable services for the severity of T.B.'s mental illness. Further, immediately prior to voir dire, T.B. acknowledged that the State was seeking only inpatient treatment rather than outpatient treatment, although he had not received "formal" notice about the State's decision to pursue inpatient services.[8]

Because commitment with outpatient services was not an option being pursued by the State, it was not the law applicable to the case, and T.B.'s line of proposed questioning was not proper. Accordingly, the trial court did not abuse its discretion in not allowing T.B. to question the jury panel about outpatient treatment.

---

[6] Only if outpatient services are being pursued in the commitment hearing, is a jury required to make a finding that those types of services are needed. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 574.0345, 574.0355.

[7] "(d) Except as provided by this subsection, not later than 48 hours before the time set for the hearing on the petition for commitment, the county or district attorney shall inform the proposed patient through the proposed patient's attorney whether the county or district attorney will request that the proposed patient be committed to inpatient services or outpatient services…."

[8] Although an application for commitment is not required, the better practice would be for the State to file an application clearly setting out its intentions. If a formal application for commitment had been filed, some of the problems illustrated by this case would have been less likely to occur.

T.B.'s third issue is overruled.

*Fifth Amendment Privilege*

In his second issue, T.B. contends the trial court abused its discretion in not permitting him to question prospective jurors on T.B.'s Fifth Amendment right against self-incrimination because T.B. still had a criminal charge pending.

The State counters that T.B.'s argument under this issue was not preserved because T.B. did not present to the trial court specific and proper questions he wished to ask the panel. *See In re Commitment of Hill*, 334 S.W.3d 226, 229 (Tex. 2011) ("a party can preserve error by asking a specific and proper question, stating the basis on which it sought to ask that question, and obtaining an adverse ruling from the trial court"). We agree with the State.

A person has a Fifth Amendment privilege not to answer official questions put to him in any proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings. *Allen v. Illinois*, 478 U.S. 364, 368, 106 S. Ct. 2988, 2991 (1986); *In re Commitment of Browning*, 113 S.W.3d 851, 862 n.10 (Tex. App.—Austin 2003, no pet.). However, blanket assertions of the privilege in civil cases are not permitted. *Browning*, 113 S.W.3d at 862 n.10. Instead, the privilege must be asserted on a question-by-question basis. *Id.*; *In re Verbois*, 10 S.W.3d 825, 828 (Tex. App.—Waco 2000, orig. proceeding). Further, the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them. *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551, 1558, 47 L. Ed. 2d 810, 821 (1976); *Gebhardt v. Gallardo*, 891 S.W.2d 327, 331 (Tex. App.—San

Antonio 1995, no pet.).

Prior to voir dire, T.B. presented the trial court with a proposed jury instruction regarding T.B.'s right to remain silent and informed the court that he "would like to voir dire on that….because [he] believe[d] that is law applicable to the case and…individuals could be challenged for cause that would not be able to follow that instruction." The requested instruction provides:

> You are instructed that though not [] criminal in nature, this proceeding grows from a criminal allegation in which the defendant has a constitutional right to remain silent. The defendant may testify on his own behalf. The defendant may also choose not to testify. The defendant's decision not to testify cannot be held against him, and it is not evidence of any kind. You must not speculate, guess or even talk about what the defendant might have said if he had taken the witness stand or why he did not. The presiding juror must immediately stop any juror from mention[ing] the defendant's decision not to testify.

Even if T.B. made a specific enough request, the proposed instruction, and thus any questions relating to it, was not proper. T.B.'s proposed instruction about which he wished to question the prospective jurors proposed a blanket assertion of his Fifth Amendment not to testify and incorrectly prohibited adverse inferences if T.B. refused to testify.

Accordingly, T.B.'s issue is not preserved for our review. T.B.'s second issue is overruled.

**FIFTH AMENDMENT**

In his last two issues, T.B. contends the trial court abused its discretion by compelling T.B. to invoke his right not to testify in front of the jury (Issue Four) and by refusing to submit a requested jury instruction on the Fifth Amendment protections

afforded to T.B. (Issue Five).  Because it relates to T.B.'s second issue just disposed, we first address Issue Five.

*Jury Instruction*

A trial court has considerable discretion to determine proper jury instructions, and we review a trial court's decision to submit or refuse a particular instruction for an abuse of discretion.  *Gunn v. McCoy*, 554 S.W.3d 645, 675 (Tex. 2018); *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012).  An instruction is proper if it assists the jury, accurately states the law, and finds support in the pleadings and evidence.  *Gunn*, 554 S.W.3d at 675; *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 855 (Tex. 2009).

The requested instruction, quoted in the discussion of Issue Two, was not proper. It does not accurately state the law because blanket assertions of the Fifth Amendment privilege in civil cases are impermissible, *Browning*, 113 S.W.3d at 862 n.10, and the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.  *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551, 1558, 47 L. Ed. 2d 810, 821 (1976); *Gebhardt v. Gallardo*, 891 S.W.2d 327, 331 (Tex. App.—San Antonio 1995, no pet.).  Because the requested instruction was not in substantially correct form, it did not have to be included in the charge.  TEX. R. CIV. P. 278 ("Failure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment.").

Accordingly, the trial court did not abuse its discretion in failing to submit T.B.'s requested instruction, and T.B.'s fifth issue is overruled.

*Compelled Invocation of Fifth Amendment*

T.B. asserts the trial court abused its discretion in compelling T.B. to invoke his right not to testify in the presence of the jury because the forced invocation of his Fifth Amendment right not to testify lead the jury to draw speculative, unfounded inferences as to what he would have said. This argument does not comport with the objection made at trial.

After the State rested its case and at the request of both parties, the trial court brought T.B. into the courtroom, outside the presence of the jury, to find out whether he wanted to testify. When asked, T.B. replied, "I am not interested in this circus." The trial court then asked that the jury be brought into the courtroom and informed T.B.'s attorney and the State that T.B. would be asked in front of the jury if T.B. was going to testify. T.B.'s counsel objected because he believed T.B. had a right not to testify regardless of whether the commitment proceeding was a civil or criminal case.

In order to preserve error for appellate review, a party's argument on appeal must comport with its argument in the trial court. *Martin v. Cottonwood Creek Constr., LLC*, 560 S.W.3d 759, 763 (Tex. App.—Waco 2018, no pet.). Because the complaint argued on appeal does not comport with the objection asserted at trial, T.B.'s fourth issue is not preserved and is overruled. *See* Tex. R. App. P. 33.1(a).

**CONCLUSION**

Having overruled each issue on appeal, we affirm the trial court's Order for Extended Mental Health Services.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Neill
Affirmed
Opinion delivered and filed December 18, 2019
[CV06]

