

# IN THE
# TENTH COURT OF APPEALS

### No. 10-20-00095-CV

**DANA FOUST,**

            **Appellant**

 **v.**

**BAYLOR SCOTT & WHITE HEALTH**
**AND BAYLOR MEDICAL CENTER WAXAHACHIE,**

            **Appellees**

---

**From the 443rd District Court**
**Ellis County, Texas**
**Trial Court No. 98134**

---

## MEMORANDUM OPINION

---

In five issues, appellant, Dana Foust, complains about a take-nothing final judgment in favor of appellees, Baylor Scott & White Health and Baylor Medical Center Waxahachie (collectively "BSW"). Specifically, Foust contends that: (1) the trial court erred by overruling her objection to testimony that called for comparison of testimony and constituted bolstering; (2) the evidence is factually insufficient to support the jury's finding that Foust was not subjected to sexual harassment; and (2) the evidence is

factually insufficient to support the jury's finding that Foust was not subjected to retaliation for her complaints against co-workers.[1] Because we overrule all of Foust's issues, we affirm.

## Background

On December 1, 2014, BSW hired Foust as a respiratory therapist to work the night shift. In her original petition, Foust alleged that, beginning in January 2015, she witnessed coworkers engage in sexually-offensive conduct. Foust purportedly observed numerous instances of sexual harassment and reported the behavior to various managers at BSW. On June 16, 2016, BSW terminated Foust's employment for an alleged continued pattern of displaying "aggressive or threatening behavior[,] such as physical or verbal intimidation, unpleasant, rude, discourteous or abusive behaviors toward co-workers . . . in violation of the personal conduct policy" at BSW.

In response to the termination of her employment at BSW, Foust filed suit against BSW, asserting sexual-harassment and retaliation claims under the Texas Commission on Human Rights Act ("TCHRA"). Foust contended that she was sexually harassed, was not accommodated for her disability, and was terminated for reporting sexual harassment and requesting accommodation for her disability. BSW filed an original

[1] We note that, in her issues presented, Foust indicated that she challenged both the legal and factual sufficiency of the evidence supporting the jury's findings on her sexual-harassment and retaliation claims. However, in the argument section of her brief, Foust does not assert legal-sufficiency challenges to the evidence supporting the jury's findings on her sexual-harassment and retaliation claims and, thus, had abandoned these challenges.

answer denying the allegations made by Foust and asserting numerous affirmative defenses. BSW also filed traditional and no-evidence motions for summary judgment, both of which were denied by the trial court.

The case was tried to a jury. After evaluating the evidence, the jury concluded that BSW did not subject Foust to a hostile work environment due to harassment based on sex and that BSW did not discharge Foust for reporting sexual harassment. The jury also answered in the affirmative that BSW made a good-faith effort to prevent retaliation in the workplace. Based on their answers to the liability questions, the jury did not answer any of the damages questions contained in the charge.

Thereafter, in accordance with the jury's verdict, the trial court signed a take-nothing final judgment in favor of BSW. Foust filed a motion for new trial, asserting legal and factual sufficiency challenges to the evidence supporting the jury's findings. Foust's motion for new trial was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c). This appeal followed.

**Comparison of Testimony and Bolstering**

In her first issue, Foust contends that the trial court abused its discretion when it overruled her objections to the testimony of Jessica Castle, an administrative supervisor at BSW, regarding whether an email was consistent with other emails describing the same incident. Foust asserts that this testimony should have been excluded because it called for an improper comparison, and because it constituted impermissible bolstering.

At trial, counsel for BSW asked Castle to review Defense Exhibit 28, which was an email Castle sent to Andrea "Sue" Simmons, Foust's direct supervisor, regarding an incident where Foust was alleged to have changed the assignments of the nightshift respiratory therapists without permission. Castle confirmed that the intent behind the email was not to terminate Foust, but rather to "mediate the situation to the best of my ability at the time that it occurred, and then I send the e-mail to make sure that the management can take care of it afterwards . . . ." Counsel for BSW then asked if Castle's e-mail was consistent with e-mails from other respiratory therapists describing the same incident and characterizing Foust's behavior as aggressive and defensive. Foust objected that this question called for speculation and was irrelevant. The trial court overruled Foust's objection.

On appeal, Foust challenges this same question as calling for an impermissible comparison of testimony and bolstering. To preserve error for appellate review, a party's argument on appeal must comport with its argument in the trial court. *See In re T.B.*, 594 S.W.3d 773, 782 (Tex. App.—Waco 2019, no pet.) (citing *Martin v. Cottonwood Creek Constr., LLC*, 560 S.W.3d 759, 763 (Tex. App.—Waco 2018, no pet.)); *see also In re D.E.H.*, 301 S.W.3d 825, 829 (Tex. App.—Fort Worth 2009, pet. denied). Because the complaint on appeal does not comport with the objection asserted at trial, Foust's first issue is not preserved and is overruled. *See* TEX. R. APP. P. 33.1(a); *see also In re T.B.*, 594 S.W.3d at 782; *Martin*, 560 S.W.3d at 763; *In re D.E.H.*, 301 S.W.3d at 829.

**Sexual Harassment**

In her second issue and third issues, Foust contends that the evidence supporting the jury's finding on sexual harassment is factually insufficient and against the great weight and preponderance of the evidence.[2]

STANDARD OF REVIEW

In a factual-sufficiency review, we consider all of the evidence in the record in a neutral light and set aside the jury's verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *see Republic Petroleum v. Dynamic Offshore Res. NS LLC*, 474 S.W.3d 424, 433 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). Jurors are entitled to resolve inconsistencies in witness testimony, whether those inconsistencies result from the contradictory accounts of multiple witnesses or from internal contradictions in the testimony of a single witness. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *see Republic Petroleum*, 474 S.W.3d at 433.

---

[2] A review of a jury's verdict for factual sufficiency of the evidence requires an evaluation of whether the jury's findings are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) ("When reviewing a jury verdict to determine the factual sufficiency of the evidence, the court of appeals must consider and weigh all the evidence, and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." (citations omitted)). Thus, Foust's complaints in her second and third issues are both challenges to the factual sufficiency of the evidence. *See id.*

DISCUSSION

Sexual harassment is a form of sex-based discrimination that the TCHRA prohibits. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018); *see also B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 279 (Tex. 2017). Sexual harassment claims generally take one of two forms: "(1) quid-pro-quo harassment, in which the harasser demands sexual favors as a condition for granting employment or its benefits, or (2) harassment that creates a hostile or offensive work environment." *Id.* at 806; *see Mayfield v. Tarrant Reg'l Water Dist.*, 467 S.W.3d 706, 712 (Tex. App.—El Paso 2015, no pet.). Here, Foust alleged sexual harassment based on a hostile work environment.

To prove sexual harassment based on a hostile work environment, the plaintiff must show (1) she was subjected to unwelcome sexual harassment, (2) she was harassed because of her sex, (3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile work environment, and (4) some basis for holding the employer liable. *Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 771. For an employer's conduct to rise to the level of a hostile work environment, it must by both objectively and subjectively hostile or abusive; in other words, the work environment must be one that a reasonable person would find hostile or abusive and one that the victim in fact perceived it to be. *See Tex. Dep't of Aging & Disability Servs. v. Loya*, 491 S.W.3d 920, 926 (Tex. App.—El Paso 2016, no pet.) (citing *Mayfield*, 467 S.W.3d at 712-13). In determining objective hostility or abusiveness, we consider the totality of the circumstances, including the

frequency and severity of the alleged conduct, whether there were physical threats or humiliation, and whether the abusive conduct unreasonable interfered with the employee's work performance. *See Loya*, 491 S.W.3d at 926. The plaintiff need not demonstrate that the conduct caused her "tangible psychological injury"; however, she must demonstrate that the conduct was more than "merely offensive." *Mayfield*, 467 S.W.3d at 713 (noting that "[a]busiveness requires extreme conduct, and takes a middle path between making actionable conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury").

At trial, Foust described instances of curse words used by her coworkers, as well as the display of a Voodoo doll in the respiratory-therapy office, that offended her. Additionally, Foust alleged that a respiratory therapist exposed her breasts to her when talking about how the respiratory therapist's breasts almost fell out of a V-neck scrub she was wearing; another respiratory therapist flashed the bottom of her breast to upset Foust; male and female respiratory therapists grabbed their crotches when Foust was around; a respiratory therapist brought a vibrator to work; and two male respiratory therapists rubbed up against Foust's backside when passing by in a small room to plug in equipment. Foust also complained that several respiratory therapists spoke about sexual acts in her presence.

Connie Irvin, a night shift respiratory therapist at BSW from December 2015 to June 2016, testified that the work environment at BSW was uncomfortable because of

"sexual innuendos that went on" regarding dating apps that several of the respiratory therapists used. The only specific instance of potentially sexual conduct that Irvin could recall was when a female respiratory therapist "was leaning over the back of this gentleman, and her breasts were kind of rubbing his head, and they were cutting up. And that made me real uncomfortable." Irvin admitted on cross-examination that she was friendly with Foust and that allegations she made in an affidavit regarding witnessing other harassing events occurred before she was hired by BSW.

Rebecca Skelton worked with Foust as a respiratory therapist and noted that she observed the usage of cursing directed at coworkers other than Foust. Skelton believed the language to be offensive, but not sexual in nature. Skelton also recalled that Simmons addressed the situation. Skelton testified that Foust regularly complained about coworkers to her, but that Foust never complained about coworkers exposing their breasts, grabbing their crotches, or talking about sexual acts. Skelton also denied ever witnessing or engaging in sexually-explicit behavior or conversations in the respiratory-therapy department.

Kristin Farrell, also a respiratory therapist who worked with Foust, characterized working with Foust as stressful and emphasized that she "constantly terrorized" coworkers. Farrell recounted that Foust "was just there to try to see if she can see you doing anything wrong," and then complain about it. Farrell acknowledged being instructed by Simmons to apologize to Foust for using the "B word" in Foust's presence.

Farrell denied exposing her breasts and talking about sexual acts, characterizing Foust's allegations as "lies." Later, Farrell did admit that she had heard a respiratory therapist talk about having sex to Glenn, another respiratory therapist. However, Farrell left the room because it made her uncomfortable. Farrell denied hearing any other conversations about sex while at work and seeing anyone touch another in an inappropriate fashion.

Another respiratory therapist, Tricia McDaniel, echoed the testimony of Skelton and Farrell. McDaniel recalled that Foust continually complained about her workload and that she was being treated unfairly. McDaniel asserted that Foust made several changes to the work schedule on her own without permission. McDaniel testified that Foust would stand in the corner of the office to video and record her coworkers to be used later in her complaints. With regard to Foust's allegations of sexual harassment, McDaniel denied seeing anyone expose their breasts, hearing anyone talk about sexual acts, and seeing anyone grab their crotch.

Jason Wilton, a respiratory therapist at BSW, noted that he had been called "an MF" more than once by one respiratory therapist who worked the night shift, but that issue was resolved and did not continue after a meeting with Simmons and the respiratory therapist who used the language. Wilton recalled that Foust "said threatening things" that violated the personal conduct policy of BSW. In June 2015, Wilton and all the other respiratory therapists in the department had a meeting with BSW Director of Human Resources John Agent to address issues and devise a plan for moving

forward. At the conclusion of the meeting, Wilton believed that everybody had a "clean slate." Wilton further testified that Foust never told him about, nor did he observe, respiratory therapists in the department "exposing breasts or grabbing crotches or somehow engaging in some sort of sexually inappropriate [behavior]."

Furthermore, Chris York, president of BSW; Agent; and Simmons noted that Foust lodged numerous complaints about her coworkers in the respiratory-therapy department. However, none of her numerous complaints mentioned any of the sexual allegations with sufficient specificity to trigger an investigation.

As shown above, a review of the record demonstrates conflicts in the evidence, which were within the province of the jury to resolve. *See O'Connor v. Miller*, 127 S.W.3d 249, 254 (Tex. App.—Waco 2003, pet. denied) (noting that it is within the province of the factfinder to determine the credibility of the witnesses and the weight to be given their testimony). The jury, as the sole judge of credibility, was entitled to believe BSW's witnesses regarding the veracity of Foust's sexual-harassment claim and the character of the alleged discriminatory conduct. Therefore, we may not pass upon a witness's credibility or substitute our judgment for that of the jury, even if the evidence might clearly support a different result. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998) (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634 (Tex. 1986)).

Accordingly, based on our review of all the evidence, we conclude that the evidence supporting the jury's finding that BSW did not subject Foust to a hostile work

environment due to harassment based on sex is not so weak or so contrary to the overwhelming weight of all the evidence that the answer should be set aside. *See Cain*, 709 S.W.2d at 176. As such, we hold that the evidence is factually sufficient to support the jury's finding. We overrule Foust's second and third issues.

## Retaliation

In her fourth and fifth issues, which comprise two pages of her thirty-six page brief, Foust contends that the evidence supporting the jury's finding that BSW did not retaliate against her for reporting sexual harassment is factually insufficient and against the great weight and preponderance of the evidence.

APPLICABLE LAW

Texas is an at-will employment state. *Ritchie v. Rupe*, 443 S.W.3d 856, 885 (Tex. 2014). At-will employment allows both employers and employees to "terminate their relationship at any time for any reason unless they contractually agree otherwise." *Hillman v. Nueces County*, 579 S.W.3d 354, 358 (Tex. 2019) (citing *Richie*, 443 S.W.3d at 885-86). However, there are exceptions to at-will employment. *See Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 453 (Tex. 1996); *see also Word v. Wilson N. Jones Reg'l Health Sys.*, No. 05-06-00881-CV, 2007 Tex. App. LEXIS 6885, at **10-11 (Tex. App.—Dallas Aug. 28, 2007, no pet.) (mem. op.) ("Statutes protecting workers from retaliatory discharge are exceptions to the common law doctrine of employment at will.").

One exception to at-will employment is the TCHRA, which prohibits retaliation against a person who, under the statute, engages in any one of the following protected activities: "(1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." TEX. LAB. CODE ANN. § 21.055. To establish a prima facie case of retaliation, an employee must show: (1) she engaged in an activity protected by the TCHRA; (2) she experienced a material adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 137 (Tex. 2015); *see Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 58 (Tex. 2021). A retaliation claim is related to, but distinct from, a discrimination claim, and one may be viable when the other is not. *Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 763-64, 781. Unlike a discrimination claim, a retaliation claim focuses on the employer's response to an employee's protected activity, such as making a discrimination complaint, rather than on the validity of the underlying discrimination complaint. *Id.* Therefore, a plaintiff need not establish that the reported discrimination occurred to support a claim for retaliation and need only establish that she had a good faith and reasonable belief that the discrimination occurred when she made her report. *See Houston Methodist San Jacinto Hosp. v. Ford*, 483 S.W.3d 588, 592 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (noting that the employee has the burden to "demonstrate a good-faith, reasonable belief that the underlying discriminatory practice violated the TCHRA").

"[O]pposition to a discriminatory practice is a protected activity irrespective of the merits of the underlying discrimination claim." *City of Waco v. Lopez*, 259 S.W.3d 147, 151 (Tex. 2008).

If the employee makes a prima facie case of retaliation, a rebuttable presumption of discrimination arises, which can alone sustain a discrimination claim. *Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 782. The employer, then "can defeat this presumption merely by producing evidence of a legitimate, nondiscriminatory reasons for the disputed employment action." *Id.* "Once rebutted, the presumption disappears, and an employee lacking direct evidence cannot prove a statutory violation without evidence that the employer's stated reason is false and a pretext for discrimination." *Id.*

> The causation standard for the *McDonnell Douglas* prima-facie-case element is not onerous and can be satisfied merely by proving close timing between the protected activity and the adverse action.[3] However, if the employer provides evidence of a legitimate reason for the adverse action, under the federal standard, the employee must prove the adverse action would not have occurred "but for" the protected activity. The but-for causation standard is significantly more difficult to prove than prima facie causation.

*Id.* at 782 (footnotes omitted); *see Apache Corp. v. Davis*, 627 S.W.3d 324, 335-37 (Tex. 2021).

---

[3] Under the framework set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, the plaintiff must first establish a prima facie case of discrimination, which requires a showing that the plaintiff (1) is a member of a protected group, (2) was qualified for the position at issue, (3) was discharged or suffered some adverse employment action by the employer, and (4) was replaced by someone outside his protected group or was treated less favorably that other similarly-situated employees outside the protected group. 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Then, the defendant must offer a legitimate, non-discriminatory reason for its actions. *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). The burden then shifts back to the plaintiff to rebut the stated reasons and show that they are merely pretextual. *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).

The Texas Supreme Court has identified a series of factors that are useful in analyzing the causal link:

> In evaluating but-for causation evidence in retaliation cases, we examine all of the circumstances, including temporal proximity between the protected activity and the adverse action, knowledge of the protected activity, expression of a negative attitude toward the employee's protected activity, failure to adhere to relevant established company policies, discriminatory treatment in comparison to similarly-situated employees, and evidence the employer's stated reason is false.

*Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 790.

In *Apache Corp.*, the Texas Supreme Court emphasized that the "factors" are not a replacement for the "but for" causation standard. 627 S.W.3d at 337. Moreover, "[t]he factors may be more helpful in some cases and less in others. Some of the factors may actually be a distraction." *Id.* at 336. "More importantly, determining but-for causation cannot be a matter of weighing—or worse, counting—factors that may be helpful in analyzing circumstantial evidence in some situations. " *Id.* at 337. Rather, the focus must be on whether "but for" the protected activity, the termination would not have occurred when it did. *See id.*

DISCUSSION

Without citation to the record, Foust merely mentioned that she "engaged in protected activity, by opposing from within the workplace the discriminatory sexual harassment by her coworkers. She made charges within the workplace of sexual harassment. She participated, to a degree, in the minimal investigation into the matter

that Baylor undertook." Foust then alleged, without citation to the record or legal authority, that she "was fired 'because of her behavior.' Her 'behavior' was inextricably intertwined with her continuing conduct in reporting sexual harassment in the workplace when the conduct itself continued." Foust further contended, without citation to the record or legal authority, that "it is more than slightly suspicious that Baylor's decision to terminate Foust cam [sic] merely a week after Foust retained an attorney."

The record contains evidence that, on May 18, 2016, Foust changed shifts without permission and left the hospital without finding a replacement, which caused each of her patients to require reassessment. Foust was suspended with pay and received a final written warning for her actions. Foust accepted no responsibility for this incident. Jessica Castle, an administrative supervisor at BSW, stated that she received word about Foust changing assignments and thereafter called Foust. Castle recounted the following: "I called Dana, and she was very upset, defensive, and aggressive. She refused to trade assignments. By this time, she said she had finished all her treatments and that it wasn't, quote, unquote, fair."

Shortly after this incident, BSW Director of Human Resources John Agent received a series of e-mails from Foust's coworkers, describing Foust's "erratic behavior" and that the "group suddenly felt threatened." Indeed, as noted earlier, several of Foust's respiratory-therapist coworkers described Foust's conduct as threatening. Agent investigated and concluded that Foust,

exhibited a pattern of disruptive, threatening, and intimidating behavior. Employees existed in fear of upsetting Dana which would result in some form of complaint. There are numerous incidents when Dana would be observed peering around a corner, ease [sic] dropping on conversation, or creating conflict with employees.

Dana used those observations or moments of conflict to report to leadership, always leaving her role in the incident out. This added to the intimidation and created a perception of a threatening environment. For example, during the shift change[,] she would change the thermostat in the department from 76 to 88 and watch while the room warmed. Then become upset later when employees openly became warm and returned the temperature back to its original setting. She would contact administration and tell the group that administration will deal with this as well as other items.

The final incident occurred when she approached an employee on the day shift and made threats concerning other employees in the department. Dana remarked "Oh I'm not leaving" and became agitated as she recapped an event that took place last weekend saying "you wait just see what happens". Dana added "that all these things she has been disciplined for, counseled or accused of is not over" and that "we would see".

Dana Foust's behavior is consistent with the behavior exhibited on her Final Counseling Form. Dana has attempted to circulate information to other departments in order [to] gain support and tarnish the department. Interviews from employees outside the department have revealed that Dana has selected new employees to converse with and informed those employees that her manager is a liar, people in her department are mean and that they will get theirs. In most cases[,] she would get agitated when the employee walked away or showed no interest. These incidents caused new employee [sic] to report the incident to their supervisor out of fear.

Employees within respiratory and outside this department are concerned about their safety. Employees have remarked that Waxahachie does not have armed police on campus and co-workers consider Dana a danger to their well-being.

Given the foregoing, Agent recommended that Foust's employment be terminated, and no one involved in the decision disagreed. Simmons, Foust's direct supervisor, made the final decision to terminate Foust's employment and remarked that Foust was the first person she had fired in the twenty years that she had been supervising the respiratory-therapy department at BSW. As Agent escorted her from the building, Foust said to Agent "black devil" or "bye devil."

Based on our review of the evidence as applied to the factors outlined in *Alamo Heights Independent School District*, we conclude that the evidence supporting the jury's finding that BSW did not retaliate against her for reporting sexual harassment is not so weak or so contrary to the overwhelming weight of all the evidence that the answer should be set aside. *See Cain*, 709 S.W.2d at 176; *see also Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 790. Accordingly, we hold that the evidence is factually sufficient to support the jury's finding. We overrule Foust's fourth and fifth issues.

## Conclusion

Having overruled all of Foust's issues on appeal, we affirm the judgment of the trial court.


STEVE SMITH
Justice

Before Chief Justice Gray,
     Justice Johnson,
     and Justice Smith

Affirmed

Opinion delivered and filed November 30, 2022

[CV06]

